UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTIAN PRESSLEY,

    Plaintiff,

v.

                              Case No. 21-cv-000148

JASON WALKER, and
CITY OF SOUTH MILWAUKEE,

    Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

---

Defendants, Jason Walker and City of South Milwaukee, by their attorneys, Gunta Law Offices, S.C., submit the following Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint.

## INTRODUCTION

More than six months after the deadline to amend complaints, a few weeks before the close of discovery, and after Defendants filed for Summary Judgment, Plaintiff filed a belated Motion to Amend his Complaint. Plaintiff's Motion to Amend his Complaint is a bad faith attempt by Plaintiff to unduly delay proceedings, circumvent summary judgment, and prejudice the Defendants.

On November 17, 2021, Plaintiff moved for leave to amend his Complaint. Plaintiff argues that discovery had been frustrated by the Defense making it difficult to for him to learn facts necessary to amend, and that he could not fruitfully depose the Defendants without first knowing everything Ms. Robin Polak told the Defendants. Plaintiff attached a proposed Amended Complaint to his Motion, naming an additional ten defendants, all City of South Milwaukee police

personnel: Michael Luczak, Gerrit Verhagen, Nathaniel Seifert, Daniel Doering, Christopher Rohde, James Rodman, Dan Margetta, Kadija Walusay, William Jessup, and Jon Rivamonte. The proposed Amended Complaint includes new theories of how Plaintiff was allegedly wronged by how the Defendants handled the allegations made by Ms. Polak against him.

While Plaintiff claims discovery frustrated his ability to amend his Complaint, this claim is merely pretextual, and an attempt by Plaintiff to avoid summary judgment dismissal. Plaintiff knew the existence of all the proposed newly named defendants far in advance of the dispositive motion deadline. Furthermore, Plaintiff's Motion for Leave to Amend asserts that he acquired the discovery necessary to amend his Complaint on October 18, 2021, eighteen days before the dispositive motion deadline and a month before he filed his Motion. Plaintiff could have filed his Motion prior to the dispositive motion deadline, but he chose not to, resulting in prejudice to the Defendants, and an undue delay in the proceedings.

Because the Plaintiff did not offer any justifiable reason for his failure to timely amend his Complaint, this Court should not reward Plaintiff for his strategic dilatory tactic. Moreover, Plaintiff's Motion is futile as his proposed Amended Complaint does not include new legal claims but is merely a reassertion of vague theories that would not survive summary judgment. Therefore, this Court must deny Plaintiff's Motion for Leave to Amend his Complaint.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order may only be modified for good cause and with the judge's consent. Here, the scheduling order deadline to amend the pleadings was May 3, 2021. Plaintiff failed to show "good cause" to modify the Order.

Rule 15(a)(2) of the Federal Rules of Civil Procedure states a party may amend a complaint by leave of court. However, a district court may deny leave to amend a complaint on the grounds

of "undue delay, bad faith, dilatory motive, prejudice or futility." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740 (7th Cir. 2007). All of the factors that warrant denial are present here.

I. **PLAINTIFF'S PROPOSED AMENDMENT IS FUTILE.**

An amendment is futile if it could not survive a motion for summary judgment or motion to dismiss. *Estate of Porter v. State of Illinois*, 36 F. 3d 648, 690 (7th Cir. 1994). When a plaintiff files a motion for leave to amend his complaint after defendants moved for summary judgment, the applicable standard in evaluating futility of the proposed amendment is whether the amendment would survive summary judgment. *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 391–92 (7th Cir. 1989); *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996). At the summary judgment stage, the court should consider all unopposed materials filed in support of the defendants' summary judgment motion. *Smith* at 1414.

    A. **Plaintiff's Amended Complaint Does Not Satisfy the Basic Pleading Requirements Set Forth Under Rule 8 of the Federal Rules of Civil Procedure.**

Rule 8 requires a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, Rule 8 requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Seventh Circuit has ruled that under Rule 8, a complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is. . . . A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (internal quotation omitted); *see also Dausch v. Rykse*, 52 F.3d 1425, 1430 (7th Cir. 1994). A complaint that is incoherent and violates these standards will be dismissed. *See Reyes-Pena v. Chief Commander of the United States*, No. 14-

CV-815-MJR, 2014 WL 3907738, at *3 (S.D. Ill. Aug. 11, 2014).

Plaintiff's proposed Amended Complaint violates these standards as the allegations in the Amended Complaint are incoherent. For example, Plaintiff's first claim for relief is that "under the 9th Amendment, any right so declared by the Plaintiff that is not in conflict with the Constitutional Rights of others, is thereby a Right as enumerated and intended by James Madison, and the United States Congress." To respond, Defendants would have to guess at what Plaintiff is actually claiming. *See Reyes-Pena* at *3 (ruling that neither the court nor the parties are required to guess or piece together a claim on Plaintiff's behalf).

Because Plaintiff's Amended Complaint is written in a manner that makes it difficult for Defendants to file a responsive pleading and makes it difficult for the Court to conduct orderly litigation, it should deny Plaintiff's Motion for Leave to File his Amended Complaint.

> **B. Claims a-k, m-q, gg, and kk of the Proposed Amended Complaint Fail to State a Claim upon which Relief can be Granted Against Any of the Individually Named Defendants.**

Plaintiff's claims a, b, c, d, e, f, g, h, i, j, k, m, n, o, p, q, gg, and kk fail to meet the pleadings standard because they fail to state a claim upon which relief can be granted against any of the individually named defendants and would not survive a motion to dismiss or summary judgment.

The Court must consider whether Plaintiff has adequately alleged the personal involvement of each defendant in the purported constitutional violations. It is well settled that a state actor must have sufficient personal involvement in the constitutional violation to be liable under § 1983. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). A § 1983 claim will lie only against those individuals personally responsible for the constitutional violation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2011). "Plaintiffs may not relay on 'vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged

4

unconstitutional conduct.'" *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008)).

A plaintiff suing a governmental official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right. *Hernandez ex rel Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011). Accordingly, §1983 plaintiffs must "ground [their] legal conclusions in a sufficiently plausible factual basis" that places each defendant "on notice of what exactly [he or she] might have done to violate [the plaintiffs'] rights under the Constitution, federal law, or state law." *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009).

Here, Plaintiff's proposed Amended Complaint fails to itemize the involvement of any individually named defendant in claims a-k, m-q, gg, and kk. Since these claims do not identify any personal involvement in a constitutional deprivation, these claims would be dismissed and are therefore futile to this lawsuit.

### D. Plaintiff's Remaining Claims Would Not Survive Summary Judgment.

As argued previously, Plaintiff's proposed Amended Complaint is incoherent and Defendants have to guess at what claims Plaintiff is bringing. However, in an attempt to be exhaustive, Defendants have guessed that Plaintiff is bringing the following claims, which would also be dismissed at Summary Judgment.

#### i. Plaintiff's Equal Protection and Equal Access Claims Against the City of South Milwaukee and Jason Walker. (Dkt. 32-1, Amended Complaint Claim for Relief l)

In Claim for Relief l., it appears that Plaintiff is alleging that he was denied the ability to inquire by phone into the status of his criminal complaint filed against Ms. Polak. There is, however, no such Constitutional right. To the extent he is alleging that he was denied emergency

5

services, there is no constitutional right to emergency services. *See Ross v. U.S.*, 910 F.2d 1422, 1428 (7th Cir.1991) (holding that "government's failure to provide essential services does not violate the Constitution."); *see also Harrell v. City of Chicago Heights, Ill.*, 945 F.Supp. 1112, 1119 (N.D. Ill. 1996) (dismissing § 1983 claim because there is no constitutional right to emergency services, including 911 services). Thus, this claim fails as a matter of law and would not survive summary judgment.

> **ii. Plaintiff's *Monell* Liability and Official Capacity Claims. (Dkt. 32-1, Amended Complaint Claim for Relief dd, ee, and ¶¶ 40-42)**

As discussed above, Plaintiff's Amended Complaint is vague and unclear as to the actual defendants, the specific constitutional violations being alleged, whether the allegations are directed against one or more of the defendants, whether the allegations are intended to be individual capacity or *Monell* claims, and what specific allegations are directed against the City of South Milwaukee. What is clear, is that any municipal liability claim made by Plaintiff is deficient. While Plaintiff attempts to establish a *Monell* claim by including buzz words of "pattern," or "policy and practice" he failed to plead sufficient factual support, which fails even the *Twombly-Iqbal* pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 684–87, 129 S. Ct. 1937, 1953–54, 173 L. Ed. 2d 868 (2009).

A suit against a public official in his or her official capacity is effectively a suit against the City itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To bring an official-capacity claim, Plaintiff must show that a policy or custom of the government entity played a part in the alleged constitutional deprivation. *See id.; Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). As discussed below, Plaintiff includes no allegations that would suggest that there is any

overarching policy or custom that violated his rights. He alleges only isolated acts by defendants acting in their individual capacities.

With respect to any possible *Monell* liability claims against the City of South Milwaukee and "official" capacity claims against defendants including William Jessup and Jason Walker (herein after jointly referred to as "*Monell* Defendants"), although the Supreme Court has held that municipalities are susceptible to liability under § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), strict constraints limit the liability of *Monell* Defendants for the unconstitutional acts of its employees or others under § 1983. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Under *Monell*, municipal liability exists only "when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. The Seventh Circuit identified three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy, statement, ordinance, or regulation that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Here, Plaintiff's municipal liability claims are deficient. First, Plaintiff has not identified any specific written policy, which when enforced, was causal of the alleged constitutional violations. The failure to identify a policy defeats Plaintiff's claim: "[l]ocating a policy ensures

7

that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). *See also Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017) ("The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?").

Second, Plaintiff did not adequately plead a custom or practice claim. While a custom or practice "may be so persistent and widespread [such that it has] the force of law," when identifying such custom, "[t]he word 'widespread' must be taken seriously." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167 (1970). The critical issue is whether there was a particular custom or practice that was so well-settled that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. *Board of County Comm'r v. Brown*, 520 U.S. 397 (1997). *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007) (four deadly force incidents was not enough to provide the city with actual or constructive knowledge); *Gable v. City of Chicago*, 296 F.3d 531, 538-539 (7th Cir. 2002) (three incidents over four-year period in which city agents erroneously informed vehicle owners that their automobiles were not impounded at city lot were too few to support municipal liability); *Robles v. City of Fort Wayne*, 113 F.3d 732, 737 (7th Cir. 1997) (evidence failed to support plaintiff's claim that City had policy of investigating citizen complaints against police officers in such way as to exonerate officer where evidence indicated four citizen complaints against officer were not sustained, while fifth was sustained after internal investigation).

While Plaintiff uses the phrase "pattern or practice" there are no factual allegations to support this statement. The Amended Complaint contains only conclusory statements that *Monell*

8

Defendants "did knowingly allow a culture of police misconduct" (Dkt. 32-1, Amended Complaint ¶ 42); "created routine pattern or practice, that knowingly would affect the integrity of investigations" (Dkt. 32-1, Amended Complaint ¶ dd); and "created a working environment where it was routine or accepted policy or practice to speculate that sexual assault allegations were in fact true, if those allegations were made by a woman against a man, and avoid scrutinizing the allegations based on gender." (Dkt. 32-1, Amended Complaint ¶ ee) The proposed Amended Complaint is devoid of specific facts demonstrating the existence of a widespread practice of speculating that sexual assault allegations were in fact true when made by a woman against a man. The proposed Amended Complaint does not allege <u>any</u> other instances of speculation in the context of sexual assault allegations.

In addition to establishing widespread conduct, a plaintiff must also allege and show deliberate indifference. *Thomas*, 604 F.3d at 303. Under this stringent standard, "it is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006). Proof of deliberate indifference can take one of two forms: (1) "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"; or (2) "a repeated pattern of constitutional violations" made the deficiencies in the systems "plainly obvious to the city policymakers." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). *See also Connick v. Thompson*, 131 S. Ct. 1350, 1365 (2011) (while "highly predictable" is a viable basis to establish deliberate indifference, it was not highly predictable in this case that failure to better train

9

prosecutors on *Brady* obligations would have resulted in the production of the exculpatory evidence and prevented plaintiff's wrongful conviction).

Deliberate indifference is a high bar to plead and prove. For example, in *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011), the Seventh Circuit held that the complaint, which alleged an equal protection claim, failed to meet the pleading standards under *Twombly/Iqbal*. The core allegation in *McCauley* was that the City of Chicago "failed to have adequate policies in place for the protection of female victims of domestic violence." *McCauley*, 671 F.3d at 614. The Seventh Circuit determined the complaint failed to state a claim:

> The allegations … do not plausibly suggest that the City maintained a policy or practice of selective withdrawal of police protection. To the contrary, the complaint alleges that the City failed to have particularized practices in place for the special protection of domestic violence victims. In essence, the complaint alleges that the City failed to promulgate specific policies for this particular class of crime victims, not that the City denied this class of victims equal protection. At most, the factual allegations in the complaint plausibly suggest the uneven allocation of limited police-protection services; they do not plausibly suggest that the City maintained an intentional policy or practice of omitting police protection from female domestic-violence victims as a class.

*Id.* at 618-619.

Here, Plaintiff fails to allege factual averments showing widespread conduct and deliberate indifference involving speculation that sexual assault allegations were true if made by a woman against a man. Plaintiff does not make any allegations that describe widespread conduct that could support a claim of municipal liability, nor does he allege any other instance of speculation in a sexual assault allegation, whether in the past or ongoing. Instead, Plaintiff only points to the specific incident involving him.

Additionally, Plaintiff does not adequately plead deliberate indifference. Plaintiff's Amended Complaint makes no factual allegations that the alleged deprivations were so widespread to constitute deliberate indifference. Plaintiff does not allege that officers had previously utilized

10

speculation in sexual assault investigations such that their deficient training had become (a) "so obvious" and "the inadequacy so likely" to result in constitutional deprivations or (b) that the repeated pattern of violations created systematic deficiencies "plainly obvious" to policymakers.

Moreover, Plaintiff does not set forth any factual averments regarding any alleged violations being brought to the attention of the *Monell* Defendants and what corrective action the *Monell* Defendants failed to issue to avoid the "highly predictable" likelihood that repeat constitutional violations would occur. There is simply no allegation nor inference that any alleged violations had been occurring for any length of time historically such that the *Monell* Defendants had been aware of the constitutional risks. The absence of such allegations is fatal to Plaintiff's municipal liability claims.

Third, Plaintiff has failed to plead facts giving rise to municipal liability based on failure to train. To state a claim for a municipal civil rights violation based on a failure to train, a plaintiff must allege that the municipality adopted a policy that amounts to "deliberate indifference to the rights of the person with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For example, a city may be deliberately indifferent if its policymakers choose to retain a program which they have actual or constructive notice that one of their training programs causes city employees to violate citizens' constitutional rights. *See generally, Connick*. Here, the Amended Complaint only alleges the City of South Milwaukee and its supervisors failed "to provide proper training to deal with mentally ill persons during an investigation of this type" (Dkt. 32-1, Amended Complaint ¶ 41) and generally failed "to provide proper training to officers in a manner that created a pattern or practice of police misconduct and violation of civil rights." (Dkt. 32-1, Amended Complaint ¶ 40) The Amended Complaint does not specify in what way the training was deficient.

To establish a failure to train claim, "[a] pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference." *Id*. at 62. Even if "a particular officer may be unsatisfactorily trained" that "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). A plaintiff must allege more than mere conclusory allegations that the alleged constitutional violation was the result of inadequate training. For example, in *Moss v. U.S. Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) (reversed on other grounds) the Ninth Circuit granted defendants' motion to dismiss because the plaintiffs in that case did not specify in what way any training or supervision was deficient.

Plaintiff again fails to allege sufficient facts to establish deliberate indifference. Plaintiff does not allege any facts that the *Monell* Defendants were aware of or put on notice of any allegedly unconstitutional conduct attributable to inadequate training. Plaintiff also does not allege how the *Monell* Defendants failed to train their officers. Nor does Plaintiff allege, through plausible facts, that the *Monell* Defendants knew it was highly predictable that such constitutional deprivations would occur without more or different training of its police officers because there was a pattern of similar constitutional violations. "Without notice that a course of training is deficient in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Plaintiff's allegations fall far short of what is required—rather Plaintiff's "threadbare recitals" are exactly the conclusory allegations the Supreme Court warned of in *Iqbal*. As such, Plaintiff's claims against the *Monell* Defendants would fail as a matter of law and would not survive a motion to dismiss much less summary judgment.

      iii.    **Plaintiff's Perjurious and False Statement Claim Against the City of South Milwaukee, Will Jessup, Jason Walker, Gerrit**

**Verhagen, Michael Luczak, Kadija Walusay, and Daniel Doering. (Dkt. 32-1, Amended Complaint, Claim for Relief ff)**

Plaintiff's proposed Amended Complaint, claim ff, asserts that Defendants City of South Milwaukee, Jessup, Walker, Verhagen, Luczak, Walusay and Doering, creating a Wisconsin CR-215 that included perjurious, recklessly false statements, violated the Plaintiff's rights under the United States Constitutions, 4th, 5th, 9th, and 14th Amendments and 42 U.S.C. § 1983. In order to prove this claim, Plaintiff would have to show "not only that material perjured testimony was used to convict him, but that it was knowingly and intentionally used by the prosecuting authorities to do so." *Anderson v. United States*, 403 F.2d 451, 454 (7th Cir. 1968). However, Plaintiff was never convicted of sexual assault, so he would not be able to survive a motion to dismiss or motion for summary judgment on this claim.

    **iv.**    **Plaintiff's 911 Call Spoliation Claim Against the City of South Milwaukee, William Jessup, Jason Walker, and Dan Margetta. (Dkt. 32-1, Amended Complaint, Claim for Relief hh)**

At the outset, a claim of spoliation of evidence is connected to the merits of the underlying suit. *See Gawley v. Ind. Univ.*, 276 F.3d 301, 316 (7th Cir.2001). If a plaintiff cannot prevail in the underlying suit even with the allegedly lost or destroyed evidence, then a claim for spoliation will fail because the plaintiff cannot prove damages. As the discussion above shows, Plaintiff's case is indeed without merit. All his claims would be properly dismissed on a motion to dismiss or summary judgment.

Generally, Plaintiff alleges the destruction of a 911 call violated his "right to seek remedy in Court" in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments and 42 U.S.C. §1983. (Dkt. 32-1, Amended Complaint, Claim for Relief hh) Foremost, there is no freestanding constitutional right to evidence in the context of a civil case.

Plaintiff's allegations are not clear, but even if this Court were to construe the claim as one

13

asserted under the due process clause it would fail. The due process clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To prevail on a § 1983 procedural due process claim, a plaintiff must demonstrate that he: (1) has a cognizable property or liberty interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Plaintiff does not have a property interest in the recording of a 911 call, so his claim would fail on the first element. Although destruction of evidence in this context may furnish grounds for imposition of spoliation sanctions, it does not give rise to an independent cause of action under the due process clause.

Furthermore, Plaintiff has failed to meet even the test for a spoliation inference. To draw an inference that the 911 call contained information adverse to the Defendants, Plaintiff must demonstrate that the Defendants intentionally destroyed the documents in bad faith. *Faas v. Sears, Roebuck & Co*., 532 F.3d 633, 644 (7th Cir. 2008). The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information. *Id.* at 644. Plaintiff fails to even allege that the 911 call recording contained any information adverse to the Defendants and Plaintiff has put forth no factual averments that Defendants intentionally destroyed the 911 call in bad faith. Regardless, the proper remedy for spoliation is a motion for sanctions, not an independent cause of action.

> v. **Plaintiff's False Arrest Claim Against the City of South Milwaukee, William Jessup, Jason Walker, and Jon Rivamonte. (Dkt. 32-1, Amended Complaint, Claim for Relief jj)**

Initially, because municipalities, and their departments, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents" any claims against the City of South Milwaukee here would be dismissed as a matter of law.

Second, the absence of probable cause is an "essential predicate" to any claim under Section 1983 for unlawful seizure predicated on unlawful arrest. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). "Probable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment in Section 1983 suits." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (citations omitted). Once officers discover sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in hopes of uncovering potentially exculpatory evidence. *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir. 1989). It "is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville, Ind.*, 320 F. 3d 733, 742–43 (7th Cir. 2003). At the heart of the probable cause analysis is "what the police know, not whether they know the truth . . . ." *Grameos*, 797 F. 2d at 439. Thus, in making the determination:

> [C]ourts evaluate probable cause "not on the facts as an omniscient observer would perceive them but, on the facts as they would have appeared to a reasonable person in the position of the arresting officer — seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. "If so, the arrest is lawful even if the belief would have been mistaken." *Id.* at 1057–1058.

*Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998).

Importantly, an eyewitness's complaint or information is sufficient, in and of itself, to form probable cause. *See, e.g., Grimm v. Churchill*, 932 F. 2d 674, 675–76 (7th Cir. 1991) (*citing Gramenos v. Jewel Companies, Inc.*, 797 F. 2d 432, 439–40 (7th Cir. 1986) ("Just as a single eyewitness's statement — without further investigation or a narration of contrary evidence — can support a warrant, so a single eyewitness's statement can support an indictment and a conviction."). Additionally, the Fourth Amendment continues to govern a claim for unlawful pretrial detention even after an arrest. *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017).

Plaintiff's claims premised on false arrest and detention must fail because Plaintiff's

15

Amended Complaint contains only the conclusory allegation that "there was significant evidence demonstrating innocence and no evidence demonstrating guilt." (Dkt. 32-1, Amended Complaint, Claim for Relief jj) Contrary even to his own conclusory allegation, it can be inferred through the Amended Complaint that Plaintiff was in fact arrested because Ms. Polak reported to the police that Plaintiff had sexually assaulted her and made subsequent claims of sexual assault by Plaintiff. (Dkt. 32-1, Amended Complaint, ¶¶ 20-22, 32, 38, 54). Assuming the facts in the Amended Complaint as true "Plaintiff was arrested due to the false allegations made by Robyn Polak…" (Dkt. 32-1, Amended Complaint, ¶54). As such, Plaintiff's claim of false arrest would fail as a matter of law.

## II. PLAINTIFF'S DELAYED MOTION WAS FILED IN BAD FAITH AS A DILATORY TACTIC TO AVOID SUMMARY JUDGMENT DISMISSAL.

Plaintiff strategically waited until Defendants filed their Motion for Summary Judgment to move for leave to amend his Complaint. Such undue delay supports denial of his Motion. Courts in this Circuit deny a plaintiff leave to amend a complaint if the request is "too late." *Holy Cross Hosp. v. Bankers Life & Cas. Co.*, No. 01 C 1505, 2002 WL 31369938, at *2 (N.D. Ill. Oct. 18, 2002). The longer the delay, the greater the presumption against granting leave to amend. *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994).

In this case, the deadline to amend the pleadings was May 3, 2021, more than six months prior to Plaintiff's filing his motion. Plaintiff has not shown "good cause" for failing to follow the scheduling order deadline. Rather, Plaintiff strategically waited until after the Defendants filed their dispositive motion to file his Motion for Leave to Amend.

Plaintiff's request is not only untimely but also a bad faith attempt to avoid summary judgment and dismissal.

## III. INFORMATION OBTAINED IN DISCOVERY DOES NOT EXCUSE

16

PLAINTIFF'S FAILURE TO AMEND HIS COMPLAINT EARLIER.

Plaintiff claims the amendment is necessitated by recently obtained discovery in this case. Even taking Plaintiff's argument as true, he concedes the requested information was produced to him by the Milwaukee County District Attorney's Office in a separate matter on October 18, 2021. *See* (Dkt. 32, p. 2-3) By that date, Plaintiff had all the information needed to amend his complaint to address any "new" information he obtained from the Polak interview. As such, he should have move to amend prior to the dispositive motion deadline, rather than waiting until after Defendant's filed their summary judgment motion. Such delay in filing his motion is inexcusable.

Further, Plaintiff knew of all the proposed additional defendants well in advance of filing his motion. Plaintiff sent Defendants multiple notices of depositions for the proposed additional defendants prior to filing his motion. *See* (Dkt. 21; 21-1)

In addition, Plaintiff claims that he has known many of the Defendants personally for many years. (Dkt. 32-1, ¶ 69) There is simply no excuse for Plaintiff's failure to join them as defendants earlier.

Plaintiff's Motion for Leave to Amend based on newly discovered information must be dismissed, because the information was not newly discovered, and nothing precluded Plaintiff from seeking leave to amend prior to the dispositive motion deadline.

### IV. DEFENDANTS WILL BE PREJUDICED.

Plaintiff's belated attempt to amend his Complaint, two weeks after Defendants filed their Motion for Summary Judgment, six months after the deadline to amend, and less than two weeks before the close of discovery, unequivocally prejudices the Defendants. Extensive time and resources have already been expended litigating this matter through the dispositive motion deadline. The Seventh Circuit has ruled that "[e]leventh hour additions of new legal and factual

17

theories inevitably require new rounds of discovery and additional legal research. This is bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants." *Campbell v. Ingersoll Milling Machinery Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

If the Plaintiff is allowed to amend his Complaint at this late juncture, it would essentially force the parties to start all over and would require the Defendants to endure another costly and lengthy discovery process, and to refile an amended summary judgment motion tailored to the new complaint and any related discovery. Defendants would also be prejudiced by being deprived of the opportunity to finally bring this matter to a conclusion.

Plaintiff's last-ditch attempt to move the ball, also prejudices the judicial system, and the public interest in prompt resolution of disputes. *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992). This case is ready to be decided. As such, justice and judicial economy would be best served by bringing this case to conclusion.

### V. IF PLAINTIFF IS GRANTED LEAVE TO AMEND, DEFENDANTS REQUEST AN AWARD OF COSTS AND ATTORNEY'S FEES.

If the Court permits Plaintiff to amend his complaint, Defendants respectfully request that this Court require Plaintiff to pay any and all costs, including attorney's fees, Defendants will incur by the amendment – including any costs associated with additional discovery efforts. *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002) (court may deny motion to amend when it would cause non-moving party to assume additional costs of litigating new issues and moving party does not offer to reimburse the non-moving party for its expenses); *see also* 6A Wright, Miller, & Kane, Federal Practice and Procedure § 1485 (3d ed. 2005).

### CONCLUSION

For those reasons stated above, the City of South Milwaukee and Jason Walker request that the Court deny Plaintiff's Motion for Leave to File an Amended Complaint.

Dated at Wauwatosa, Wisconsin this 1st day of December, 2021.

                    GUNTA LAW OFFICES, S.C.
                    Attorneys for Defendants

                    ___*/s/ Kyle R. Moore*_____
                    Gregg J. Gunta, WI Bar No. 1004322
                    Ann C. Wirth, WI Bar No. 1002469
                    Jasmyne M. Baynard, WI Bar No. 1099898
                    Kyle R. Moore, WI Bar No. 1101745
                    Kiley B. Zellner, WI Bar No. 1056806
                    9898 W. Bluemound Road, Suite 2
                    Wauwatosa, Wisconsin 53226
                    T: 414) 291-7979 / F: (414) 291-7960
                    Emails:     gjg@guntalaw.com
                                   acw@guntalaw.com
                                   jmb@guntalaw.com
                                   krm@guntalaw.com
                                   kbz@guntalaw.com