UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTIAN D. PRESSLEY,

                    Plaintiff,

                                                    Case No. 21-cv-148-pp

          v.

CITY OF SOUTH MILWAUKEE,
and JASON WALKER,

                    Defendants.

**ORDER DENYING PLAINTIFF'S MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NOS. 32, 49), DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE DELAYED RESPONSES (DKT. NO. 37), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 40), DENYING DEFENDANTS' RULE 7(H) EXPEDITED MOTION FOR LEAVE TO FILE SURREPLY TO DKT. NO. 42 (DKT. NO. 48), DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR LEAVE (DKT. NO. 51), DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 56), DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) AND ORDERING PLAINTIFF TO IDENTIFY MISSING DISCOVERY**

I.     **Procedural History**

          On January 19, 2021,[1] the plaintiff, who is representing himself, filed in

Milwaukee County Circuit Court a document titled "Intentional Tort Complaint

---

[1] The complaint attached to the defendants' notice of removal does not bear a state-court file stamp. Dkt. No. 1-1. The defendants' notice of removal says that they are removing Milwaukee County Circuit Court Case No. 21CV000359, which was commenced on January 19, 2021. Dkt. No. 1 at 1. The Wisconsin Circuit Court Access Program shows that the complaint in <u>Christian Pressley v. City of South Milwaukee, et al.</u>, Case No. 2021CV000359 (Milwaukee County Circuit Court) was filed on January 19, 2021 and that the case was removed to federal court on February 15, 2021. https://wcca.wicourts.gov/

1

and Discovery Demand," alleging that the South Milwaukee Police Department investigated and arrested him based on false allegations by Robyn Polak of sexual assault. Dkt. No. 1-2. The plaintiff alleged that he had spent two and a half days in the Milwaukee County Jail even though the district attorney allegedly notified the City of South Milwaukee that he would not pursue the charges. Id. at ¶27. The first page of the complaint alleged "slander, defamation, libel, false imprisonment, obstruction, false arrest and civil rights violations in contradiction to the United States Constitutional Amendments 4 and 14 in violation of 42 U.S.C. 1983 and discrimination based on gender." Id. at page 1. According to the plaintiff, officers had discovered—prior to arresting him—evidence that Polak had fabricated her claims "and was giving and receiving affectionate contact freely with Pressley the night of the incident." Id. at ¶18. The plaintiff alleged that the City of South Milwaukee and individual defendant Jason Walker had threatened to arrest him if he "were to inquire by phone the status of his criminal complaint that he filed in person against Robyn Polak for having made the false allegations of sexual assault." Id. at ¶28.

On February 8, 2021, the defendants filed a notice of removal with this court. Dkt. No. 1. They answered the complaint the same day. Dkt. No. 4. The parties filed a Rule 26(f) plan on March 2, 2021. Dkt. No. 11. On March 3, 2021, the court entered a scheduling order, setting a deadline of May 3, 2021 by which to amend the pleadings, a deadline of November 30, 2021 by which to complete discovery and a dispositive motion deadline of November 5, 2021.

caseDetail.html?caseNo=2021CV000359&countyNo=40&index=0.

2

Dkt. No. 12. Notably, the parties asked the court to set the dispositive motions deadline over three weeks *before* the deadline for completing discovery. The court did so.

Five weeks after the court entered the scheduling order, the plaintiff filed a motion asking the court to compel discovery, to impose sanctions and to extend the deadline for completing discovery. Dkt. No. 15. The defendants responded. Dkt. Nos. 16, 17. The plaintiff did not file a reply in support of his motion until November 10, 2021—seven months later. Dkt. No. 28. On October 20, 2021, however—five months after the defendants responded to his first motion—the plaintiff filed a motion for leave to stay discovery "and timeline." Dkt. No. 19. The defendants opposed the motion, dkt. no. 20, and the plaintiff did not reply.

The day after they opposed the motion to stay, the defendants filed a motion for summary judgment; they filed the motion on the November 5, 2021 deadline for filing dispositive motions that the court had set in the March 2021 scheduling order (as noted, a deadline over three weeks prior to the expiration of discovery). Dkt. No. 23. Two weeks after the defendants filed the motion, the court received from the plaintiff a motion for leave to amend the complaint, as well as a proposed amended complaint. Dkt. Nos. 32, 32-1. The original complaint was eight pages long, named two defendants and purported to allege twenty-five claims (though several were simply assertions of fact), dkt. no. 1-2;

3

the proposed amended complaint was nineteen pages long,[2] named twelve defendants and purported to raise twenty-five claims, dkt. no. 32-1. The same day, the court received from the plaintiff his brief in opposition to the defendants' motion for summary judgment. Dkt. No. 34. The defendants filed a reply brief, dkt. no. 35, which meant that as of December 1, 2021, the motion for summary judgment on the original complaint had been fully briefed, *and* there was a pending motion for leave to amend that complaint. The defendants opposed the plaintiff's motion for leave to amend the complaint. Dkt. No. 36.

A little over a week after the defendants filed their opposition to his motion to amend the complaint, the court received from the plaintiff a motion for leave to "file delayed response to defendant's motions." Dkt. No. 37. The motion indicated that the plaintiff planned to file several documents, including "[r]esponse and supplemental responses to recent Defendant filings," a supplement to his motion for leave to amend the complaint, a supplement to his motion to compel and a new motion for sanctions. Id. at 1. The defendants opposed the motion. Dkt. No. 38.

Five days later, on December 28, 2021, the court received from the plaintiff a second motion for sanctions, dkt. no. 40, as well as a response to a declaration that had been filed by the defendants in support of their response to the plaintiff's motion for an extension of time, dkt. no. 42. The defendants filed a brief in opposition to the second motion for sanctions. Dkt. No. 43. This

---

[2] The plaintiff numbered the pages of the proposed amended complaint; although he indicates there were twenty-one pages, pages 16 and 17 are missing. Dkt. No. 32-1 at 15-19.

time, the plaintiff filed a reply brief in support of his motion for sanctions, dkt. no. 46, along with a declaration, dkt. no. 47.

On January 18, 2022—six days after the court received the plaintiff's reply brief—the defendants filed an expedited, non-dispositive motion under Civil Local Rule 7(h) (E.D. Wis.) for leave to file a sur-reply to the plaintiff's response to the declaration the defendants had filed in support of their response to his motion for an extension of time. Dkt. No. 48. The following day—January 19, 2022—the court received from the plaintiff a second motion for leave to amend the complaint. Dkt. No. 49. The first three pages of the second motion are identical to the motion for leave to amend that the court received from the plaintiff in November 2021; the last page is dated November 16, 2021, just as the earlier motion had been, but the plaintiff added paragraphs to the last page about evidence he claims was uncovered in November 2021 depositions. Dkt. No. 49 at 4. The attached proposed second amended complaint had ballooned to forty-two pages, named nine defendants and purported to raise 111 claims. Dkt. No. 49-1.

A week later, the court received from the plaintiff his brief in opposition to the defendants' Rule 7(h) motion to file a sur-reply. Dkt. No. 50. A week after *that*, the defendants moved to strike the plaintiff's response, dkt. no. 51, along with a brief in support, dkt. no. 52. The plaintiff opposed that motion. Dkt. No. 53. The defendants also filed a brief opposing the plaintiff's second motion to amend the compliant. Dkt. No. 54.

By this time, it was February of 2022—a year since the defendants had removed the case to federal court. This court should have reacted long before it did. Unfortunately, it did not react until March 28, 2022. Dkt. No. 55. In its March 28, 2022 order, the court expressed regret that it had taken such a long time to act. Id. at 4. The court denied without prejudice the plaintiff's motion asking the court to compel discovery, impose sanctions and extend the deadline for discovery (Dkt. No. 15), explaining that the motion did not comply with the Federal Rules of Civil Procedure or this court's local rules. Id. at 4-8. The court also denied the plaintiff's motion to stay the discovery timeline (Dkt. No. 19), because the plaintiff had not identified the discovery he claimed to be missing and because he had sought to extend the deadline for amending pleadings months after that deadline had expired, without showing good cause. Id. at 8-11. The court explained that everyone must comply with the federal and local rules—even people who are representing themselves. Id. at 5. The court told the parties that it would address the remaining motions by separate order. Id. at 2.

A week later, the court received from the plaintiff a motion asking the court to reconsider its March 28, 2022 order. Dkt. No. 56. The plaintiff apologized for not understanding the rules, indicating that he'd assumed that the case could not go forward until the court had ruled on his motion to compel. Id. at 1. He asserted that because he is representing himself, "justice should prevail." Id. at 2. The remainder of the motion disputed various factual allegations made by the defendants and argued that the court should "allow

6

Lady Justice to lead the way" despite the fact that he is representing himself and regardless of his gender or the gender of Robyn Polak. Along with the motion for reconsideration, the plaintiff filed fourteen pages of documents, including a notice of claim, email exchanges between he and defense counsel, an arrest report, a probable cause statement and judicial determination and a criminal complaint and an amended criminal complaint against Robyn Polak. Dkt. No. 57. The plaintiff titled these documents "Plaintiff's Rule 37 Certification of Good Faith." Id. at 1.

## II. The Court's Concerns

Before addressing the motions still pending, the court must address two general issues: the tangled procedural posture of the case and some issues relating to discovery.

### A. Procedural Posture

The plaintiff is no stranger to litigation. He filed three complaints in this district in less than a year, two naming the City of South Milwaukee as a defendant. Pressley v. City of South Milwaukee, Case No. 20-cv-1048; Pressley v. Ozaukee County, Case No. 20-cv-1404; Pressley v. City of South Milwaukee, Case No. 21-cv-148. He has filed cases in state courts, suing several individuals and municipalities. See, e.g. Pressley v. City of South Milwaukee, et al., Case No. 2021CV000359 (Milwaukee County); Pressley v. City of South Milwaukee, Case No. 2020CV005309 (Milwaukee County); Pressley v. City of South Milwaukee Police Dept., Case No. 2020CV001332 (Milwaukee County); Pressley v. City of Milwaukee, 2019CV001027 (Milwaukee County); Pressley v.

7

<u>Grafton Police Dept.</u>, Case No. 2016CV000234 (Ozaukee County).

https://www.wicourts.gov.

Although the plaintiff states repeatedly in his filings that he is proceeding *pro se*, he also has told the court that he has studied legal ethics, dkt. no 53 at 3; that he has a "bachelors level education in law," dkt. no. 40 at 17; that "[e]very case law that [he has] read . . . has involved simple concepts," dkt. no. 53 at 3; that he had "not yet taken Civil Procedure in undergrad when [he] filed this case" (implying that he has taken it since), dkt. no. 56 at 2; that when he "created the Complaint [he] did not have any education on Monel[3] and no understanding of how facts needed to be plead. I do now . . . ," dkt. no. 34 at 4; and that the defense has discovered that he "was not new to depositions completely," dkt. no. 42 at 7.

The plaintiff admits that he knows that there are federal and local rules that govern civil litigation. Dkt. No. 56 at 2 ("I do understand that there are Local and Federal Rules. I had not yet taken Civil Procedure in undergrad when I filed this case. That being said, I am pro se and justice should prevail."). The Seventh Circuit repeatedly has held that even *pro se* litigants must follow procedural rules. <u>Collins v. Illinois</u>, 554 F.3d 693, 697 (7th Cir. 2009). So the plaintiff should know the following: Before a party may file a motion asking the court to compel the other side to produce discovery, that party must meet and confer with the other side in a good-faith attempt to resolve the issue and must

---

[3] The court assumes the plaintiff is referring to <u>Monell v. Dep't of Soc. Services of City of New York</u>, 436 U.S. 658 (1978).

8

file a written certification that the party has done so; that certification must contain certain information. Civil L.R. 37. The local rules provide for a motion, a response and a reply. Civil L.R. 7(a)-(c). A party who files a motion for leave to amend a pleading "must state specifically what changes are being sought by the proposed amendments." Civil L.R. 15 (b). A party who seeks an extension of time to do something must show good cause for the extension and if the party files the motion after the deadline for taking action has passed, the party must show excusable neglect. Fed. R. Civ. P. 6(b). A party opposing a summary judgment motion must cite evidence from the record in support of any fact that that party claims cannot be, or is, genuinely disputed. Fed. R. Civ. P. 56(c). The party must respond to the movant's proposed findings of fact by reproducing each numbered paragraph of the moving party's statement of facts and responding to each one by either agreeing with it or pointing to specific evidence in the record that disputes it. Civil L.R. 56(b)(2).

The plaintiff has stated repeatedly that he is educated in the law, yet he has filed motions that do not comply with the federal and local rules, then asserted that he was not aware of the requirements imposed by those rules. He has failed to file reply briefs, then argued that he did not know that he was supposed to. His arguments and support for the motions he has filed continue to trickle in months after the motions are fully briefed, forcing the defendants and the court to go searching through hundreds of pages of documents to find items he cited weeks or months before filing them and delaying the court's ability to determine the contours of his claims. His motions contain incorrect

9

record citations. He has twice sought leave to amend with different proposed amended complaints, and he filed both motions after the defendants had filed their motion for summary judgment on the original complaint. He failed to respond to the defendants' proposed findings of fact in support of their motion for summary judgment. He files motions, responses and replies that either lack any citation to authority or that go on for pages and pages. He frequently uses motions, responses and replies to argue the merits of the lawsuit, which it is appropriate for the court to address only at summary judgment. His tone is often sarcastic, unprofessional and combative; he attacks not only the defendants but their lawyers in both email communications and motions.

The responsibility for the snarled procedural posture of the case, however, does not lie solely with the plaintiff. The court did not rule promptly on the plaintiff's motions (or the defendants', for that matter). In the void left by the court's failure to rule, the parties filled the docket with motions and responses and replies. On February 8, 2022, the plaintiff filed his response to the defendants' motion to strike. Dkt. No. 53. In that response, he said,

> Judge, there have been motions, motions and then motions. It is time that the Court respond. This Plaintiff will cease all filings until the Court responds to the Motions from last year, to present. At minimum there needs to be a response to this Plaintiff's Motion to Compel from last year and a decision as to continuance for Discovery. There is still evidence that the Defense has in its possession that it is concealing. The Defense has never been ordered to reveal all evidence in its possession.

Id. at 1. While the plaintiff's tone is ill-advised, the court cannot dispute that its failure to rule earlier has added to the chaos.

Finally, as noted, the parties proposed a dispositive motions deadline before the deadline for completing discovery. Against its better judgment, the court set that schedule. As the court discusses below, however, as things have played out, the defendants' summary judgment motion was filed before the plaintiff conducted depositions, before the parties obtained the transcripts of those depositions and before the plaintiff obtained an unredacted version of a document that he argues is critical to his claims. The court will discuss this situation further below.

The court will deny the plaintiff's motions because they do not comply with the rules and/or were not properly supported at the time of filing. Dkt. Nos. 32, 37, 40, 49. The court also will deny the defendants' request to file a sur-reply, dkt. no. 48, and their motion to strike plaintiff's response, dkt. no. 51. And for reasons it will explain, the court will deny without prejudice the defendants' motion for summary judgment.

Just as the plaintiff has had enough of the court's failure to promptly rule on his fragmented and voluminous filings, the court is disenchanted with the plaintiff's confrontational and verbose litigation style and his consistent failure to follow federal and local rules despite his claim to have legal training. The court will work to stay on top of the parties' filings. It expects that the plaintiff will work to follow the rules and to adopt a more professional tone.

B.  Discovery

1.  *Pleadings Regarding Discovery*

The court denied the plaintiff's April 2021 motion to compel (Dkt. No. 15) because he did not comply with Civil L.R. 37. But in that motion, the plaintiff asserted that the defendant had refused to "provide items such as recordings of Polak when calling to the Police Department . . . ." Dkt. No. 15 at 2. He asserted that Polak had made a 911 call the night of the alleged incident, and that he never had been allowed to hear it. Id. at 3. He stated that the defendants had admitted that they had "destroyed the 911 call made by Polak." Id. at 6. He asserted that he'd put the defendants on notice as of February 23, 2020 that they should preserve all evidence, including the 911 call. Id.

In their May 5, 2021 response, the defendants stated, "Defendants do not have any 911 calls to produce." Dkt. no. 16 at 3. They later asserted that the 911 call "no longer exists." Id. at 6. They stated that they had explained in their response to the plaintiff's discovery demands that "911 call recordings are retained for 120 days unless specifically requested or saved for evidence." Id. at 7. They indicated that the "system automatically purges calls every 120 days." Id. The defendants stated that the district attorney had "no processed" the case against the plaintiff and never requested the 911 call (which had been recorded on January 10, 2020), and that as a result, the call was purged on May 9, 2020. Id. They stated that "[t]he first Open Records request received requesting phone calls was on May 14, 2020, outside of the 120 retention period." Id.

12

The defendants filed their motion for summary judgment and supporting materials on November 5, 2021—twenty-five days before the deadline for completing discovery. Dkt. Nos. 23-27. The defendants relied on allegations in the plaintiff's complaint and a declaration from defendant Jason Walker as evidence in support of their arguments. Dkt. No. 26.

In his (belated) November 10, 2021 reply in support of his motion to compel, the plaintiff stated, "I requested the 911 call. They had deleted it knowing they were under Notice of Claim." Dkt. No. 28 at 2. He also stated that he'd requested "all documents that were associated with the file," and that the defendants "concealed a CR-215 that includes perjury of the officers." Id. He repeated that the reason the defendants did not have a 911 call to produce was because they destroyed it after he'd presented them with a notice of claim. Id. at 3. He stated that he had been trying to get information since filing "the first Open Records Request in January 2020." Id. at 5.

In his November 10, 2021 reply brief in support of one of his motions to extend time, the plaintiff stated that on October 18, 2021, he had "obtained a significant portion of evidence that was sought in this case but was denied," and that he was waiting on the court to rule on his previously-filed motion. Dkt. No. 29 at 1. He stated that he'd received from the Milwaukee County District Attorney's Office "Document, 'Probable Cause Determination' or Wisconsin CR-215," which he said he'd previously requested from the South Milwaukee Police Department "in both Open Records Requests and in Discovery of this Case." Id. at 2. He said that he was "denied" the document

13

"and not informed of its existence." Id. He argued that the CR-215 probable

cause determination was critical to his false imprisonment claim. Id. at 4. He

asserted that the CR-215 contained fabrications. Id. at 5. The plaintiff also

indicated that he'd asked the defense to identify anyone else who might have

the 911 call that had been destroyed. Id. at 15.

The plaintiff attached to this filing a document titled "OPEN RECORDS

REQUEST" he dated January 21, 2020 and addressed to the South Milwaukee

Police Department. Id. at 22. There is a stamp at the bottom of the document—

a ring with the times of day around it; someone has circled 11 am. Id. The

document references Wisconsin chapter 19 and says that the plaintiff requests

the following information:

1.  Response shall include any and all investigative findings related to the January 9th incident between myself and the individual known by me as "Robyn" who lives on Memorial in South Milwaukee.
2.  Response shall include all written notes of investigators.
3.  Response shall include all video obtained from all establishments investigated especially Bottoms Up and the Tap Room and outside of Powers.
4.  Response shall include all text and email records of investigators regarding investigation
5.  Response shall include a list of all officers and detectives and supervisors involved in the above named investigation and a short statement as to the nature of their involvement.
6.  Response shall include the name of the individual that made the determination to arrest shall be specified.
7.  Response shall include a statement from that individual from line 6 as to the reasoning as to why they made the decision to arrest.
8.  Response shall include the employment records of all individuals listed in line 5. Employment records shall include all formal complaints for their career. Personal, non official capacity information is NOT requested. I seek only information that is regarding their performance in their duties as a color of law official.

14

Id. The document threatened a petition for mandamus upon failure to provide the information. Id.

The plaintiff also attached discovery demands dated February 8, 2021. Id. at 23-25. Those demands asked for the 911 call and any other calls Polak made to the SMPD that night and copies of all written documents "associated with the incident." Id.

On November 17, 2021, the plaintiff filed an opposition brief to the defendants' November 5, 2022 motion for summary judgment. Dkt. No. 34. Among other things, the plaintiff stated, "I have not had the opportunity to depose. That opportunity has been obstructed by the Defense frustrating the discovery process." Id. at 5.

The deadline for completing discovery was November 30, 2021. Dkt. No. 12. On December 13, 2021, the plaintiff filed his motion asking the court to allow him to provide delayed responses to "recent defendant filings." Dkt. No. 37 at 1. He stated that he had deposed "Defendants Walker, City of South Milwaukee, it's employee's and recently added Defendant's on November 29th and 30th," and that he was waiting on the transcripts of those depositions from the court report. Id.

On December 23, 2021, the defendants responded that motion, opposing it. Dkt. No. 38. The defendants pointed out that the plaintiff had waited until the last two days of the discovery period to depose ten police officers, even though he had had information about their potential involvement in the case for months. Id. at 3. Defense counsel also stated in the motion that "Plaintiff

15

. . . claimed that Defense counsel intentionally refused to cure discovery, without showing any discovery that Defense counsel intentionally refused to cure." Id. at 1. Defense counsel also filed a declaration regarding the exchange of discovery—particularly the events that led to the scheduling of depositions on the last two days of the discovery period—between the parties. Dkt. No. 39. In that declaration, counsel explained that in April 2021 the defendants had provided the plaintiff with discovery responses listing nine South Milwaukee Police officers. Id. at ¶2. He averred that in August 2021—four months later—the plaintiff sent notices of deposition for nine witnesses (not all of them officers identified in the defendants' April 2021 discovery responses). Id. at ¶3. The defendants arranged for the depositions, which the plaintiff had noticed to take place every fifteen minutes between 8:00 a.m. and 10:45 a.m. on August 26, 2021. Id. at ¶¶3-4. Counsel averred that on August 24, 2021—two days before the scheduled depositions—the plaintiff had emailed counsel extending a settlement demand, indicating that he would prefer to discuss settlement prior to conducting depositions and cancelling the August 26, 2021 depositions. Id. at ¶5. Counsel conveyed the settlement demand to the city; the city council rejected it on September 7, 2021 and defense counsel notified the plaintiff of that fact via email on September 9, 2021, asking whether the plaintiff "planned on proceeding forward." Id. at ¶¶6-7. On November 7, 2021, the plaintiff requested depositions of the nine individuals identified in the defendants' April 2021 discovery and the depositions were scheduled and

16

taken November 29 and 30, 2021. Id. at ¶¶8-9; Dkt. No. 39-2 (notices of deposition).

In his December 28, 2021 motion for sanctions, the plaintiff asserted that on February 3, 2020 he had served a Notice of Claim on the defendants. Dkt. No. 40 at 3. He also stated that on March 6, 2020, Christopher R. Smith[4] had filed a notice of appearance in Pressley v. City of South Milwaukee, Case No. 20CV1332, "regarding an Open Records Request that included a demand for all 'investigative findings,'" implying that as of that date, an attorney representing the City of South Milwaukee should have been aware of his open record request. Id. The plaintiff asserted that May 9, 2020 would have been the end of the "120-day retention period for 911 calls auto delete function to have deleted the 911 call." Id. He argued that approximately three months elapsed between the date on which he served the notice of claim and the date on which the 911 tape was destroyed. Id. at 4.

The sanctions motion included a section titled "Concealment of Discovery responsive CR-125 'Probable Cause' determination submission to court officials." Id. at 6. In this section, the plaintiff alleged that the "CR-125" contained false information, that the defendants had admitted that they had the "CR-125" in their possession when the plaintiff made his discovery

---

[4] The Wisconsin Circuit Court Access Program indicates that Christopher Smith was one of the defense attorneys representing defendant City of South Milwaukee Police Department in Pressley v. City of South Milwaukee Police Department, Case No. 2020CV001332 (Milwaukee County Circuit Court). https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CV001332&countyNo=40.

demands and that his discovery demands covered the "CR-125." Id. at 8. He also asserted that the "CR-125" was responsive to the February18, 2020 open records request. Id. at 9. He reiterated that the Milwaukee County DA had provided him with the "CR-125" on October 17, 2021 but stated that that version was redacted. Id. at 10. The plaintiff asserted that on October 20, 2021, he'd sent interrogatories to the defense about the "CR-125" which they'd refused to "answer honestly." Id. The plaintiff indicated that he did not receive an unredacted copy of the "CR-125" until December 10, 2021. Id. at 12. (He later clarified that he'd received it on December 9, 2021, not December 10. Dkt. No. 46 at 1.)

The plaintiff attached to this motion several documents, including the open records request he'd provided the court in November. Dkt. No. 40-1 at 7. This time, however, he also included a January 22, 2020 letter from Dan Margetta, the records custodian for the South Milwaukee Police Department, acknowledging receipt of the open records request. Id. at 8. The letter stated that the January 10, 2020 incident was still "an active investigation" and "will not be released at this time per Wisconsin State Statute 19.35(1)(am)(1)." Id. It indicated that once the investigation was complete, the information could be released, but that the plaintiff might have to make a pre-payment if the cost of the records search was more than $5.00. Id. The plaintiff included a second letter from Margetta, this one dated January 27, 2020, that told the plaintiff that he owed $9.40 for thirty pages of documents, a DVD booking video, two DVDs containing officer body camera video and postage. Id. at 9. There is a

18

final letter from Margetta dated February 11, 2020, providing the plaintiff with the records. Id. at 10.

On January 3, 2022, the plaintiff filed "Plaintiff's Additional Response to Defense ECF 39." Dkt. No. 42. (Dkt. No. 39 is defense counsel's declaration about the scheduling of depositions; the plaintiff quoted from the document to which he purported to respond and the quoted language comes from Dkt. No. 38, the defendants' opposition to the plaintiff's motion for an extension of time.) The plaintiff stated that defense counsel had accused him of failing to show what discovery the defense had intentionally refused to cure; the plaintiff responded, "Wow. Seriously. What is Defense Counsel reading? CR-125 anyone? Hello!?" Id. at 2.

The defendants asked to file a sur-reply so that they could address the plaintiff's arguments that he did not receive the "CR-125" and that the defendants destroyed the 911 calls in bad faith. Dkt. No. 48 at 3. In the attached, proposed sur-reply, the defendants argued that there was no such thing as a "CR-125 report." Dkt. No. 48-1 at 2. They asserted that the plaintiff did not ask for such a document until December 4, 2021 (citing Dkt. No. 48-3), that in preparing to respond they had realized the plaintiff was referring to the CR-215 probable cause determination and that they immediately had sent him an unredacted version of that document on December 9, 2021 (citing Dkt. No. 48-4). Id. at 2, 3. They noted that the plaintiff had had the redacted version since October 2021—prior to the defendants filing their summary judgment

motion on November 5, 2021 and prior to the November 30, 2021 close of discovery. Id. at 3-4.

The defendants also denied that they had intentionally destroyed the 911 calls. Id. at 4. They stated that the 911 calls were auto-deleted on May 14, 2020[5] under the City's 120-day retention period *before* the open records request from the plaintiff. Dkt. No. 48-1 at 4; cf. Dkt. No. 56-1 at 4 (unauthenticated email purportedly from defense counsel saying that the 911 call was purged on May 9, 2020 and that the first open records request requesting the call was received on May 14, 2020).

The plaintiff responded that the CR-215 was responsive to his earliest discovery demands and challenged the defendants' assertion that the first time they understood what he wanted was when he sent them an email on December 4, 2021. Dkt. No. 50 at 2. He asserted that immediately upon receiving the redacted version of the CR-215 from the district attorney, the plaintiff sent the defendants emails notifying them that he had received the redacted copy. Id. at 3. The plaintiff said that as early as his open records request and discovery demands, he asked for "investigative findings," and he insists that the CR-215 constituted the "ultimate investigative finding." Id. at 7.

The plaintiff attached to his motion for reconsideration a completed form DJ-LS-25, State of Wisconsin Notice of Injury and Claim. Dkt. No. 56-1 at 1. The document is dated February 23, 2020 and notarized on March 9, 2020. Id.

---

[5] This appears to be a typo; everywhere else in the record, the date of deletion of the 911 call is listed as May 9, 2020.

The pages attached to the form assert that named members of the South Milwaukee Police Department violated the plaintiff's rights through false arrest, failing to collect known exculpatory evidence, denying the plaintiff information necessary to allow him to seek a legal remedy, ignoring the criminal acts of others against the plaintiff and denying the plaintiff "access to color of law services." Id. at 2. The document references Milwaukee South Police Department incident #20-000783 and says that officers had video evidence that contradicted the allegations made by the "so called victim." Id. It asserts that "Defendants" arrested the plaintiff with no evidence and denied his liberty for 2.5 days. Id. It also asserts that the "defendants" had refused to give the plaintiff "any of the investigative materials that are now of a closed case," had refused to speak with him and had harassed him. Id. at 2-3. There is no indication that this document was sent to anyone or filed anywhere; it does not bear a "received" stamp. It is not addressed to anyone. It does not mention the date of the incident or Robyn Polak.

The plaintiff also attached the unredacted CR-215 Probable Cause Statement and Judicial Determination. Id. at 8-9. The probable cause portion was completed by Officer Gerrit Verhagen at 12:59 p.m. on January 15, 2020. Id. at 9.

On February 8, 2022—two months after the summary judgment motion had been fully briefed—the plaintiff filed his response to the defendant's motion to strike his response to the defendants' motion for leave to file a sur-reply. Dkt. No. 53. He included nine deposition transcripts with this pleading.

21

*Deposition Transcripts*

Defense counsel's December 2021 declaration demonstrates that the plaintiff had the opportunity to depose defense witnesses in August 2021 but elected to cancel the depositions in lieu of settlement negotiations. Dkt. No. 39. The plaintiff waited until two months after he learned of the rejection of his settlement offer to request rescheduled depositions and noticed those depositions for the last two days of the discovery period. He made his request two days after the defendants had filed their summary judgment motion and the depositions were noticed to take place days before his own opposition materials were due; he did not ask for additional time to respond to the summary judgment motion. Then, in an opposition brief to the summary judgment motion that the plaintiff dated November 16, 2021, he claimed that he had not "had the opportunity to depose" and that his opportunity to depose "has been obstructed by the Defense frustrating the Discovery process," dkt. no. 34 at 5, even though he had issued deposition notices to nine officers just five days earlier, on November 11, 2021, dkt. no. 39-2. Almost two weeks later, on December 13, 2021, the court received from the plaintiff a request for leave to file a "delayed response." Dkt. No. 37. It was in this motion that the plaintiff indicated that he was waiting for the transcripts of the November depositions from the court reporter.

The upshot of the plaintiff's conduct is that at the time the defendants' deadline to file their summary judgment motion rolled around on November 5, 2021, the plaintiff had noticed and then canceled depositions and had not

asked to reschedule them. The defendants prepared their motion at a time when the plaintiff had not asked to reschedule depositions. Rather than filing a request for additional time to respond to the motion (and explaining that he had noticed depositions and would like to conduct them before responding), the plaintiff responded to that motion, giving the impression that the defense had prevented him from taking depositions although by that time he'd noticed nine depositions.[6] The plaintiff noticed and took depositions, then *after the fact* asked this court to give him more time to obtain the transcripts of those depositions so that he could incorporate them into some unidentified pleading—not his response to the motion for summary judgment, because he already had filed that. He since has filed a response to the defendants' motion to strike and included all nine transcripts, but he made no reference to them in the pleading and did not quote their contents.

The court has noted that in their joint Rule 26(f) plan, the parties proposed a schedule that required parties to file summary judgment motions twenty-five days before the expiration of the discovery period. Dkt. No. 11 at 5. Had the court set the discovery deadline prior to the summary judgment deadline (its usual practice), at the very least the parties would have had the deposition transcripts, and perhaps other discovery, at the time they filed their dispositive motions. Because the plaintiff dated the deposition notices two days

---

[6] The court suspects the plaintiff would argue that the way the defendants "obstructed" his ability to conduct depositions and "frustrated" the discovery process was by failing to give him the unredacted statement of probable cause and judicial determination. But he scheduled and conducted the depositions before receiving that unredacted document.

after the summary judgment deadline, and conducted the depositions on the last two days of the discovery period, the deposition transcripts were not available until after the summary judgment motion had been fully briefed.

The deposition transcripts are now in the court record, albeit uncited. The court has reviewed those transcripts. It appears possible that there is evidence in those transcripts relevant to the defendants' summary judgment arguments and to the plaintiff's responses.

3.    *911 Call(s)*

The plaintiff has asserted that he put the defendants on notice several times that they should preserve all evidence, including Polak's 911 call or calls from the night of the incident. The first form of notice that the plaintiff identifies is the January 21, 2020 open records request he filed with the South Milwaukee Police Department. But that request did not ask for recordings of telephone calls. Dkt. No. 29 at 22. It asked for investigators' notes, video, emails, lists of officer names. It did not mention recordings of telephone calls or the 911 call from the incident in question.

Next, the plaintiff says that on February 23, 2020 he provided a notice of claim. As the court has stated, this document does not indicate to whom the plaintiff provided it. Dkt. No. 56-1 at 1. The instructions on the form require the noticing party to mail it to the Attorney General in Madison, Wisconsin within 120 days of the event giving rise to the filing party's claim for injury. Id. If the plaintiff sent the notice to the Attorney General in Madison on February 23, 2020, it is not clear how the South Milwaukee Police Department would

24

have known about it. Nor does the notice of claim ask for anything. It makes allegations against various officers. It says that the officers ignored opportunities to obtain exculpatory evidence and ignored his attempts to help them. Id. at 2. It says the officers had refused to give the plaintiff "investigative materials." Id. But it does not ask anyone to provide the plaintiff with anything, does not demand that anyone preserve evidence and does not mention recorded phone calls or a 911 call. The purpose of a notice of claim under Wis. Stat. §893.82(3) is not to obtain discovery. It is to "[p]rovide the attorney general with adequate time to investigate claims which might result in judgments to be paid by the state," to "[p]rovide the attorney general with an opportunity to effect a compromise without a civil action or a civil proceeding" and to put a limit on civil damages in proceedings against state officers or employees. Wis. Stat. §893.02(1).

Finally, the plaintiff says that he put the defendants on notice through his discovery demands that he wanted the 911 call or calls. If the plaintiff is referring to his discovery demands in *this* case, that argument fails. The plaintiff filed this lawsuit in state court on January 18, 2021—eight months *after* the 911 calls were auto-purged. The plaintiff's discovery demand in this case could not have put the defendants on notice prior to the date that the calls were purged. If the plaintiff means that he put the defendants in this case—the City of South Milwaukee and Jason Walker—on notice in one of his prior federal cases or in one of the state cases that he was seeking the 911

calls, he has not identified which case, the date he made the demand or the way in which he made it.

Defense counsel responded to the plaintiff that there *was* an open records request for the 911 calls, but that it was received on May 14, 2020, after the calls had been purged. The plaintiff has not provided proof that between January 10, 2020 and May 9, 2020, he put the South Milwaukee Police Department on notice that he wanted the 911 calls or that he put them on notice that they should preserve all evidence.

4.    *CR-215 Statement of Probable Cause and Judicial Determination*

The plaintiff insists that his open records request, notice of claim and discovery demands put the defendants on notice that one of the things he was seeking was the Form CR-215 Statement of Probable Cause and Judicial Determination, and scoffs at the defendants' assertion that there is no such thing as a Form CR-125 and that they did not realize what he was asking for until defense counsel received from the plaintiff a December 4, 2021 email that said, "I would like for you to provide a CR 125 that is unredacted." (Dkt. No. 48-1).

The kerfuffle over the production of the Statement of Probable Cause and Judicial Determination appears to be the result of a misunderstanding. In both his motion for sanctions and his response to the defendants' objection to his motion to stay discovery, the plaintiff referred numerous times to "CR-125" or a "CR-125 report." The defendants indicate that they didn't realize at first what the plaintiff was talking about and assert that a "CR-125 report doesn't exist."

26

The plaintiff ridiculed this statement, characterizing it as evidence that the defendants were trying to put one over on him and on the court. But it was the *plaintiff* who transposed the numbers from "215" to "125." The Milwaukee County District Attorney's Office and the Milwaukee County Circuit Court use a form called a "Probable Cause Statement and Judicial Determination." Dkt. No. 48-5. The official form number for the Probable Cause Statement and Judicial Determination is "CR-215." It was the *plaintiff* who began referring to it as a "CR-125," transposing the first two numbers.

It also was the *plaintiff* who referred to the document as a "report." A Statement of Probable Cause and Judicial Determination is not a law enforcement report, *per se*. True, most of the form is completed by either the arresting officer or another officer familiar with the facts surrounding the arrest, often under the guidance of an assistant district attorney. The form explains the laws the officer (and often the prosecutor) believes the arrestee violated, explains who provided information and provides a summary of the facts that the officer believes provide probable cause to support the proposed charges. But once the officer has completed the probable cause section, the document is presented to a court commissioner or judge so that a judicial officer may decide whether there is probable cause to bind the arrestee over to face the charges. It is a *court* form that contains factual statements by law enforcement officers and the probable cause finding is made by a *judicial officer*.

27

If all the defendants had was a reference to a "CR-125 report," they could be forgiven for being confused about what the plaintiff was seeking. The plaintiff claims that his open records request, notice of claim and discovery demands should have put the defendants on notice that he wanted this specific document. He made his open records request to the South Milwaukee Police Department on January 21, 2020, five days after the CR-215 was completed and provided to the court. The *South Milwaukee Police Department* is unlikely to have had the CR-215 at that time. The court already has discussed the fact that it is not clear who received the plaintiff's notice of claim and the fact that the notice of claim did not ask for anything. The plaintiff's discovery demands *did* request "[c]opies of all written documents associated with the incident . . ." Dkt. No. 17-1 at 4. But the defendants have explained that the CR-215—a court document—was maintained in a different system than police reports.

On November 10, 2021—three weeks before the scheduled close of discovery, but months after he'd served his discovery demands—the plaintiff filed his reply brief in support of his motion to stay discovery and timeline. Dkt. No. 29. In that document, he mentioned the CR-215 and did not transpose the numbers—he referred to "Document, 'Probable Cause Determination' or Wisconsin CR-215" and stated that he'd gotten it from the district attorney's office. That was not a discovery demand; it was a pleading filed in court. The plaintiff says that he made email requests for this document around the time he received the redacted version from the DA's office, though he did not provide any of those emails.

28

The plaintiff believes that the defendants knew what he was asking for (even if his request was inartful) and refused to provide it until it was too late for him to use the unredacted version in the depositions. The defense insists that it didn't occur to them that the plaintiff was asking for the CR-215 until it received the December 4, 2021 email. Either way, the issue has been resolved. The plaintiff had the redacted copy of the CR-215 as early as mid-October of 2021. As of December 9, 2021, he had the unredacted version.

     5.    *Other Discovery*

Finally, the plaintiff has argued in his most recent filings that he still is missing critical discovery. He appears to have deposition transcripts. He has the unredacted version of the Statement of Probable Cause and Judicial Determination. There appears to be no dispute that the 911 call or calls have been purged. It is not clear what other items the plaintiff believes he needs.

The court will require the plaintiff to file with the court an itemized list of the discovery items that he claims he has not received. The list must be specific; an assertion that the defendants have unspecified evidence that the City of South Milwaukee discriminates against men who complain about women who have made sexual misconduct claims against them will not suffice. The plaintiff must identify documents, videos, recordings or other specific items that he believes the defendants possess and have not provided. The plaintiff must identify the discovery demand in which he requested the missing item by copying the demand into the list and must advise the court of the date he served the discovery demand. He must do this for each item on the list—

29

reproduce the discovery demand, provide the date on which he made the discovery demand and identify the item that has not been provided. The plaintiff must limit the list to four, double-spaced pages and he must list every item that he believes he has not received. Once the plaintiff has filed this list, the court will give the defendants an opportunity to respond. The court then will determine whether it believes additional discovery is needed.

If the plaintiff does not file an itemized list that complies with this order by the deadline the court sets, the court will set a date by which the defendants may either refile the summary judgment motion or file a revised summary judgment motion.

**III.    Plaintiff's Motions for Leave to File Amended Complaint (Dkt. Nos. 32, 49);**
**Plaintiff's Motion for Leave to File Delayed Response (Dkt. No. 37);**
**Defendants' Rule 7(h) Expedited, Non-Dispositive Motion for Leave to File Sur-reply (Dkt. No. 48);**
**Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Leave to File Sur-reply (Dkt. No. 51)**

A.    <u>Plaintiff's First Motion for Leave to Amend</u> (Dkt. No. 32)

The court set a deadline of May 3, 2021 by which the parties could amend the pleadings. Dkt. No. 12. On November 17, 2021—six months later and two weeks after the defendants filed their motion for summary judgment—the plaintiff filed a four-page motion for leave to amend the complaint, arguing that the defendants had frustrated the discovery process and made it difficult for him to learn the factual basis for his claims. Dkt. No. 32 at 1. He asserted that the defendants had "wantonly spoiled evidence," such as the 911 call, after they received his notice of claim. <u>Id.</u> He argued that the defendants had

refused to provide the entire incident file, concealed the CR-215 (which he'd

had in redacted form for a month, albeit from the DA's office), refused to

produce other employee records and withheld statements by Polak. Id. at 1-2.

The plaintiff said that the police officers had evidence available to them during

the investigation that would have shown them that Polak was the aggressor

and that the plaintiff refused her advances on camera. Id. at 2. He asked to

amend to include allegations about misconduct, stating that he first had

possession "of any utterances of Polak" on October 18, 2021. Id.

The defendants responded, accusing the plaintiff of a bad faith attempt

to "unduly delay proceedings, circumvent summary judgment and prejudice

the Defendants." Dkt. No. 36 at 1. They asserted that the proposed amendment

would be futile for many reasons. Id. at 3. Their last argument is the most

compelling: the defendants said that they would be prejudiced because of the

time that had passed and the resources that had been expended litigating this

case through the dispositive motion deadline. Id. at 16. They asserted that even

the plaintiff conceded that he had the information from the Milwaukee County

District Attorney's Office by October 18, 2021—before the discovery deadline.

Id. at 17 (citing Dkt. No. 32 at 2-3). They argued that given that, he could have

moved to amend prior to the dispositive motion deadline. Id. The defendants

argued that the plaintiff knew the names of his proposed additional defendants

well in advance, having served them with notices of deposition and having

known many of them for years. Id. Finally, they argued that there was no

excuse for the late filing, which would force the parties to start over with new

31

claims, new motions, new discovery and another round of summary judgment. Id. at 17-18. The defendants asked that if the court grants the motion, it award them costs and fees because of the significant costs they would incur. Id. at 18.

With respect to the substance of the motion, the defendants argued that the proposed amended complaint did not comply with Fed. R. Civ. P. 8 and that many of the allegations were incoherent (such as the claim under the Ninth Amendment). Id. at 3-4. The defendants argued that claims a-k, m-q, gg and kk failed to state a claim upon which relief can be granted against any of the individually named defendants because the claims did not identify any personal involvement. Id. at 4. The defendants asserted that the plaintiff's Equal Protection and Equal Access claims would not survive summary judgment. For example, they argued there is no constitutional right to emergency services and that the Monell claims did not identify an overarching policy or custom or adequately plead a custom or practice, widespread conduct or deliberate indifference, or a failure to train. Id. at 7-12. The defendants attacked the plaintiff's "[p]erjurious and [f]alse [s]tatement" claim because the plaintiff was never convicted of sexual assault (a required element of any such claim), the 911 spoliation claim because it was not an independent cause of action and the false arrest claim because the city may not be sued under a *respondeat superior* theory. Id. at 13-16. The plaintiff did not file a reply brief.

The court will deny the plaintiff's first motion to amend. Civil L.R. 15(b) states, "A motion to amend a pleading must state specifically what changes are sought by the proposed amendments." The plaintiff's motion does not identify

the changes he was seeking to make with the amendment beyond a general assertion that "wanton spoliation" had been added as a claim for relief and that "[t]he misconduct surrounding [the CR-215]" had been added as a claim for relief. Dkt. No. 32 at 1-2. The proposed amended complaint, attached to the motion as Dkt. No. 32-1, illustrates the reason for the rule that the specific changes must be stated. The proposed amended complaint expanded from eight pages to nineteen and from two defendants to twelve; it purports to add various new theories, including a mystifying claim that "under the 9th Amendment, any right so declared by the Plaintiff that is not in conflict with the Constitutional Rights of others, is thereby a Right as enumerated and intended by James Madison, and the United States Congress."[7] Dkt. No. 32-1 at 11. The proposed amended complaint asserts various Fifth Amendment and Fourteenth Amendment due process claims as well as Fourth Amendment claims against "defendants," without naming any particular ones. These are significant changes to the operative complaint on which the defendants had moved for summary judgment by the time the plaintiff filed this motion.

Perhaps more important, the plaintiff failed to meet his burden to show good cause for his post-deadline motion to amend. Under Fed. R. Civ. P. 16(b)(4), the court may modify a discovery schedule "only for good cause and with the judge's consent." "Rule 16(b)'s 'good cause' standard primarily

---

[7] This is a unique reading of the Ninth Amendment, which states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." "The Ninth Amendment is a rule of interpretation rather than a source of rights." Froehlich v. State of Wis., Dep't of Corrections, 196 F.3d 800, 801 (7th Cir. 1999).

considers the diligence of the party seeking amendment." <u>Alioto v. Town of Lisbon</u>, 651 F.3d 715, 719 (7th Cir. 2011). "[C]ourts have 'broad discretion' to deny leave when there is undue delay or [when an] amendment would prejudice the defendants[.]" <u>Thomas v. Mashak</u>, 743 F. App'x 702, 703–04 (7th Cir. 2018). "With a late motion for leave to amend, the underlying concern is the prejudice to the defendant rather than simple passage of time." <u>Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.</u>, 831 F.3d 815, 832 (7th Cir. 2016).

The plaintiff did not address the good cause standard, although he repeatedly argued that any delay was the defendants' fault. By his own admissions, he had Polak's statements (though not the recordings of the calls) and the redacted version of the CR-215 in his possession as early as October 18, 2021—before the discovery and dispositive motion deadlines. The defendants identified involved parties in their April 2021 discovery; the plaintiff was able to notice several depositions in August 2021, before the discovery and dispositive motions deadlines, and it was his choice to cancel them.

The proposed amended complaint does not comply with Fed. R. Civ. P. 8(b), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A nineteen-page complaint containing up to thirty-seven claims for a single event is not a "short and plain statement of the claim."

The proposed amended complaint includes events that occurred after the date the original complaint was filed. Fed. R. Civ. P. 15(d) states that "[o]n

motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The plaintiff has not asked the court to allow him to file a Rule 15(d) supplement adding events that occurred after the date on which he filed the original complaint.

The lawsuit had been pending in federal court for eleven months when the plaintiff filed this motion; the defendants had answered and filed their motion for summary judgment. The motion seeks to substantially expand and change the complaint without stating good cause for doing so.

The court will deny the first motion to amend the complaint. Dkt. No. 32.

B.      Plaintiff's Motion to File Delayed Response (Dkt. No. 37)

On December 13, 2021—twelve days after the defendants opposed his first motion for leave to amend—the plaintiff filed a motion to "for leave to file delayed response to defendant's motions." Dkt. No. 37 at 1. The motion indicated that the plaintiff would be filing "[r]esponse and supplemental responses to recent Defendant filings" (without explaining which filings), "Supplement to this Plaintiff's Motion for Leave to Amend Complaint," "Supplement to this Plaintiff's Motion for more Discovery" and a new sanctions motion. Id. The plaintiff stated that "[d]epositions were fruitful and provided material evidence that substantiates the Plaintiff's claims." Id. He indicated that he intended to remove some of the defendants from the amended complaint and modify the allegations to sue others in their official capacity only. Id. at 2. The plaintiff alleged that officers had admitted under oath

35

(presumably at the November 29th and 30th depositions) to filing a sworn court document that included false statements of fact, that they admitted that there was no evidence of the plaintiff committing sexual assault, that they relied on a person whom they knew to be a "repeated liar as well as someone that was accused herself of sexually assaulting random patrons at local bars" and that the "false accuser was demonstrated by video too [sic] have committed obstruction and to have made successive false claims of material fact." Id. The plaintiff did not ask for a specific deadline for filing delayed responses and new motions; he simply stated that he would support these assertions when the transcripts became available. Id.

The defendants responded that the court's scheduling order could be modified only for good cause. Dkt. No. 38 at 2 (citing Fed. R. Civ. P. 16(b)(4)). They argued that under Rule 15(a)(2), the court should grant the plaintiff leave to amend only if justice so required, and that it should deny such a request if the party seeking to amend caused undue delay, if that party showed bad faith or dilatory motive, if the amendment would cause undue prejudice to the opposing party or if the amendment would be futile. Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The defendants maintained that the plaintiff had had adequate time and opportunity to conduct discovery and depositions; they pointed out that the defendants had sent the plaintiff discovery in April 2021, that the plaintiff had scheduled and then canceled depositions, and that the plaintiff had waited until months after his settlement demand was rejected to notice depositions and depose City of South Milwaukee Police officers on the

36

last two days of the discovery period. Id. at 2-3. The defendants labeled the motion "another stunt by Plaintiff to redo his filings and prejudice the Defendants, who already filed for summary judgment and opposed his previous motions for leave." Id. at 3.

The defendants supported this motion with the declaration of Kyle R. Moore explaining that defense counsel served responses to plaintiff's discovery demands in April 2021 and identified officers Garrit Verhagen, Michael Luczak, Nathan Seifert, Daniel Doering, Christopher Rohde, Kevin Scheidt, Kadija Wulasy, Jason Walker and William Jessup. Dkt. No. 39 at 1. The plaintiff noticed the depositions of officers Margetta, Rodman, Doering, Benson, Verhagen, Siefert, Walker, Luczak and Jessup in August of 2021. Id. at 1-2. On August 24, 2021, the plaintiff made a settlement demand, said he would prefer to discuss the demand before taking depositions and cancelled the depositions scheduled for August 26, 2021. Id. Moore informed the plaintiff on September 9, 2021 that the City Council had rejected his settlement demand and he asked if the plaintiff planned to proceed. Id. The plaintiff waited until November 7, 2021 to request depositions of officers Verhagen, Luczak, Seifert, Doering, Rohde, Scheidt, Wulasy, Walker and Jessup. Id.  The depositions were taken on November 29 and 30, 2021. Id.

The plaintiff filed an "Additional Response to Defense ECF 39," which appears to be a reply brief. Dkt. No. 42. (As the court has noted, the additional response actually addresses arguments in the defendants' brief, which is Dkt. No. 38.) The plaintiff contended that he had plainly demonstrated that defense

37

counsel "has acted with bad faith, has unclean hands," that there should be more discovery and that the defendants' unsupported filings were "packed with assertions that make pro se filings look highly professional." Id. at 3. He explained that he had offered the defense what he characterized as a "de minimus sum" of $5,000 to settle (which the City Council had refused), but then he "discovered the CR-125 that they had been concealing" and changed his opinion. Id. at 6. (Again, the document to which the plaintiff refers is the Statement of Probable Cause and Judicial Determination, CR-215.) The plaintiff claimed that taking the depositions earlier would have been a waste of time and money without the CR-125. Id. at 7. He speculated that the "[d]efense was thinking [he] probably wouldn't have a clue what to do in Depositions," but that he wasn't "new to depositions completely" and that he caught the defense off guard; he asserted that the "first two depositions yield[ed] significant fodder" for his claim. Id. at 8.

In this district, motions are governed by Civil L.R. 7. Rule 7(a) requires that every motion "must state the statute or rule pursuant to which it is made . . . ." The plaintiff's motion doesn't cite a statute or rule; he simply said that depositions were fruitful and that he was waiting on the transcripts. Dkt. No. 37 at 1, 2. He asked to file supplemental responses to "recent Defendant filings," without identifying those filings. Id. at 1. To the extent he was referring to the defendants' motion for summary judgment, dkt. no. 23, the plaintiff already had filed his opposition to that motion, dkt. no. 34. He did not explain

what other "recent filings" the defendants had made to which he wanted to file delayed responses.

Regardless of which filings the plaintiff believed required delayed responses, he since has filed several other pleadings—a motion for sanctions, dkt. no. 40; another motion for leave to amend the complaint, dkt. no. 49; and a motion to reconsider the court's April 4, 2022 order, dkt. no. 56. The court addresses those motions in this order.

The court will deny the plaintiff's motion for leave to file delayed responses to defendant's motions. Dkt. No. 37.

C.  <u>Defendants' Rule 7(h) Expedited, Non-Dispositive Motion for Leave to File Sur-reply</u> (Dkt. No. 48);
<u>Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Leave to File Sur-reply</u> (Dkt. No. 51)

As the court has explained, the defendants sought leave to file a sur-reply to plaintiff's "additional response to ECF 39" because the plaintiff made new arguments and requested new relief. Dkt. No. 48. The defendants said that in that document, the plaintiff had cited, for the first time, various ABA rules and had asserted that he had not received a "CR-125." <u>Id.</u> at 4. Along with the declaration of Kyle Moore, dkt. no. 48-2, the defendants' attached their five-page proposed sur-reply, dkt. no. 48-1, the plaintiff's December 4, 2021 email to the defense asking them to "provide a CR 125 that is unredacted," dkt. no. 48-3, defense counsel's email to the plaintiff with the unredacted CR-215 form, dkt. no. 48-4, and copies of the redacted and unredacted CR-215, dkt. no. 48-5. In the proposed sur-reply brief, the defendants explained that the plaintiff had had a copy of the redacted CR-215 as early as October 17, 2021, which he

39

obtained in response to the plaintiff's subpoena for documents in Wisconsin Circuit Court Case No. 20CV4981. Dkt. No. 48-1 at 3. By the time of the depositions, then, the plaintiff had a copy of the redacted CR-215, which the defendants asserted did not contain any new information that had not already been disclosed by the defense in earlier discovery responses. Dkt. No. 48-1 at 3-4. The defendants also explained that the reason they had not produced the CR-215 earlier was because "it is kept in a system separate from incident reports," which makes sense given that it is more a court document than a law enforcement report. Id. at 3.

The plaintiff filed an eleven-page opposition brief; he did not ask the court to deny the motion, instead reproducing the defendants' arguments and then disputing them. Dkt. No. 50. The defendants have asked the court to strike the plaintiff's brief as improper. Dkt. No. 52. Aside from the fact that the court had not granted leave to file a sur-reply, the defendants argued that they had filed their motion under the court's Civil L.R. 7(h) expedited, non-dispositive motion procedure, which requires response briefs to be filed within seven days and limits them to three pages in length. Id. at 2.

The court will deny the defendants' motion to file a sur-reply. The court has denied the plaintiff's motion to file delayed responses to defendants' filings. Additional briefing is unnecessary. The court also will deny the defendants' motion to strike the plaintiff's response to defendants' motion for leave to file. Under Fed. R. Civ. P. 12(f), a court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous

40

matter" but such motions generally are disfavored. Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir.1989). While the defendants have asked the court to strike the response to their expedited motion, the plaintiff wasn't responding to the Rule 7(h) motion. He was filing what might be characterized as a sur-sur-reply (a term that further illustrates the problem with the plaintiff's litigation tactics). In the interest of preserving a complete record for any appeal, the court declines to strike the plaintiff's filing.

D. Plaintiff's Second Motion to Amend Complaint (Dkt. No. 49)

On January 19, 2022, the plaintiff filed another motion to amend the complaint. Dkt. No. 49. The first three pages of the motion are identical to the motion he filed in November 2021. Id. at 1-3. The only difference is that on the last page of the January 2022 motion, the plaintiff claimed that the defendants have admitted under oath in depositions that they were in possession of the "CR-125" from the date it was created, that they were aware that Polak fabricated evidence, that they were aware that witnesses on the scene contradicted Polak's claims, that Walker admitted having threatened to arrest the plaintiff and "giving leading questions to a person that they knew was suffering from mental health concerns and had not taken her medication" and that the defendants had admitted under oath that the plaintiff did not sexually assault Polak at the Tap Room as the "CR-125" falsely alleged. Id. at 4. The plaintiff accused the defendants of allowing a "culture of corruption" and of failing to create policies that "demand that officers conduct themselves in a manner that doesn't violate the rights of the accused." Id. He also claimed that

41

the depositions showed the South Milwaukee Police Department has gender-biased prejudice relating to assault allegations by a female against a male and that the defendants ignored clear and convincing evidence that it was Polak who victimized the plaintiff. Id.

Significantly different is the proposed second amended complaint the plaintiff attached to the second motion. Dkt. No. 49-1. The court already has noted that the pleading is forty-two pages long and contains 111 paragraphs of alleged claims. It appears to add state-law claims (several claims assert a "duty of care" by the defendants), adds claims about the "CR-125" and often reads like a closing argument at a trial.

In their response to the second motion seeking leave to amend, the defendants reiterated that the parties had fully briefed summary judgment. Dkt. No. 54 at 3. They pointed out that the plaintiff had filed the motion under Fed. R. Civ. P. 15(a)(2) (which addresses motions to amend other than Rule 15(a)(1) amendments as a matter of course), when the governing rule is Rule 16(b) (which governs modifications of deadlines in the scheduling order). Id. The defendants argued that even under Rule 15(a), the court has the authority to deny a motion to amend for undue delay, bad faith or dilatory motive. Id. at 4. The defendants accused the plaintiff of delaying the depositions and having had in his possession since before the close of discovery the information he claimed he needed to amend the complaint. Id.

Alternatively, the defendants argued that the proposed amendment does not satisfy Fed. R. Civ. P. 8 pleading requirements, id. at 5, contains 111

42

claims for relief (compared to twenty-seven in the original complaint), id. at 6, and cites generally to the Fourth, Fifth, Ninth and Fourteenth Amendments without placing the defendants on notice of what constitutional provision each of them allegedly violated. Id. at 7. The defendants asserted that some of the claims are damages theories, such as the allegations at p. 37, ¶mmmm: "[t]he actions of defendants did cause of the plaintiff to lose significant loss of societal benefits namely his ability to practice Jiu Jitsu at Neutral Ground in Milwaukee." Id. (citing Dkt. No. 49-1).

The defendants argued that other proposed claims are not viable. The defendants accused the plaintiff of making sweeping allegations against "defendants," plural, without describing the role each individual defendant played in the alleged constitutional deprivation. Id. at 8. The defendants said that any of the proposed claims against the South Milwaukee Police Department would have to be dismissed because the police department is not a suable entity. Id. at 9. The defendants asserted that any Monell claims would be premised on individual acts rather than an official City policy, custom or practice, id. at 10, and that the plaintiff never has identified a policy beyond the general assertion that the department favors a woman over a man when dealing with sexual assault allegations, id. at 11. As for the "perjury and false statement claims," the defendants said the plaintiff would have to show that the perjured material was used to convict him, which he would be unable to do because the district attorney "no processed" the case and did not use any allegedly perjured or false statements to prosecute the plaintiff. Id. at 12. The

43

defendants argued that there is no separate cause of action for spoliation, that the plaintiff has no cognizable property or liberty interest in the 911 call, id. (citing Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010)), and that he has no viable equal access claim because there is no constitutional right to emergency services, id. at 13. Finally, the defendants argued that probable cause is an absolute defense to the false arrest claims and that the plaintiff admits that he was arrested on the victim's allegation of sexual assault. Id. at 14 (citing Dkt. No. 49-1, ¶fffff). The defendants again sought an award of costs and fees if the court allows the plaintiff to amend because of the expense they have incurred in briefing summary judgment. Id. at 14.

The court will deny the second motion to amend. The proposed second amended complaint suffers from the same deficiencies as the proposed first amended complaint. The plaintiff did not comply with Civil L.R. 15(b) by stating specifically what changes he was seeking by the proposed amendment. His complaint has morphed to forty-two pages with nine defendants and 111 claims labeled "a" through "ggggg." Dkt. No. 1-2. It is not a "short and plain statement" of his claims as required under Rule 8. Even if the court were to ignore the excessive length of the proposed second amended complaint, some of the "claims" are not claims at all, but factual allegations, arguments and bases for a damages award. See, e.g. Dkt. No. 49-1 at ¶¶bbbb-ssss (loss of the plaintiff's ability to practice Jiu Jitsu at Neutral Ground, financial injury, emotional distress, societal standing, loss of consortium "as gaining romantic relationships has been hindered by the allegations"). Paragraph fff simply

44

asserts that the plaintiff's release without prosecution is proof that the defendants were in violation of his rights; that is not an independent cause of action Id. at fff.

Other claims are futile. The South Milwaukee Police Department is not a suable entity. See, *e.g.* Dkt. No. 49-1 at ¶¶a-g, o-t. Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The South Milwaukee Police Department is not a person. Nor is the SMPD a municipality, such that it might be subject to a Monell claim; it is a *department* of the City of South Milwaukee. Defendants in a federal lawsuit must have the legal capacity to be sued, and the "law of the state where the court is located" determines that capacity for entities that are not individuals or corporations. Fed. R. Civ. P. 17(b). "The federal courts look to state law to determine if a defendant is amenable to suit." DeGenova v. Sheriff of DuPage Cty., 209 F.3d 973, 976 n.2 (7th Cir. 2000) (citing Fed. R. Civ. P. 17(b)). Under Wisconsin law, the South Milwaukee Police Department "is not a legal entity separable from the [city] government which it serves," and is therefore not subject to suit under § 1983." Whiting v. Marathon Cty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004). And the court already has noted that the Ninth Amendment is not a source of individual rights. Id. at xxx-llll.

Finally, the proposed second amended complaint, like the proposed first amended complaint, is an improper attempt to file an unauthorized supplemental pleading to include events that occurred after the date of the filing of the lawsuit.

45

The court will not separately address each of the 111 paragraphs listed in the proposed second amended complaint. The court will deny the motion due to the plaintiff's delay, the absence of good cause, the evolving nature of the plaintiff's claims, his failure to comply with the rules and the prolixity of the pleading.

The court notes one thing: the plaintiff stated in the opening paragraphs of the proposed second amended complaint that "the concerted efforts by the SMPD and its Defense Counsel to deny discovery, and as well my illness with COVID, has caused this Amended Complaint to be delayed in its filing." Dkt. No. 49-1 at 1. The court regrets hearing that the plaintiff was infected with the COVID-19 virus and that he was ill, and acknowledges that that illness likely prevented the plaintiff from filing the motion for leave to file a proposed second amended complaint as soon as he would have liked. The court is not denying the motion based solely on the plaintiff's delay in filing. It is the combination of delay with the other deficiencies that causes the court to deny the motion.

## IV. Plaintiff's Motion for Sanctions (Dkt. No. 40)

On December 28, 2021, the plaintiff filed a second motion for sanctions and requested a hearing.[8] Dkt. No. 40. Citing Fed. R. Civ. P. 11, the plaintiff claims that the defendants and past and present "defense counselors" violated "ABA Model Rules of Professional Conduct and Fed. R. Civ. P. 26, 37." Id. at 1.

---

[8] The court is not required to hold a hearing on a motion for sanctions if there are no issues that a hearing could illuminate. See Kapco Mfg., Inc. v. C & O Enters., Inc., 886 F.2d 1485, 1495 (7th Cir. 1989); Martin v. Redden, 34 F.4th 564, 569 (7th Cir. 2022).

46

He generally asserts things that he believes a "respectable" attorney would do—"not participate in a scheme to hinder, delay or defraud an accused person's rights," inform the client that a person has the right to know of evidence used against them and make clear that subordinates should not violate ethical rules. Id. at 2-3. The plaintiff says that the defendants' two law firms have hindered the litigation process both intentionally and maliciously. Id.

The plaintiff identifies several actions that he believes warrant sanctions:

1.  Destruction of the 911 call after he served the notice of claim.
2.  Concealment of discovery "responsive CR-125 "Probable Cause" determination submission to court officials.
3.  Frivolous assertion of privilege or legal obligation to deny discovery that contains utterances of Polak, based on HIPPA and Wis. Stat. 165.87(3)(c).
4.  Making false assertion to the court that all responsive material had been provided.
5.  Failure to provide timely cure for the concealment of the CR-125.
6.  Behavior unbecoming a jurist in a deposition (Attorney Moore allegedly rose up out of his seat, pointed his finger at the plaintiff, and threatened to end the deposition when the plaintiff asked him to make more specific objections).

Id. at 3-17. The plaintiff reports that he has had a relationship with the defendants, having settled a separate case against the City of South Milwaukee. Id. at 17. He maintains the evidence destroyed (911 call) and the evidence concealed (the "CR-125") are critical pieces of information. Id. at 18. The plaintiff makes a point of contrasting his own pre-law degree (graduating in the spring of 2022) with the experience of the defendants' law firms who specialize in this type of law. Id. at 19-20. The plaintiff asks for full discovery, a referral of the alleged misconduct to the state bar, a declaration that the 911 call was favorable to the plaintiff's case and that its destruction and the

47

concealment of the "CR-125" may be considered as consciousness of guilt, a declaration that the assertion of privilege under HIPPA or Wis. Stat. §165.87 is invalid, an order compelling the defense to release all of their evidence, damages of $6,500 from Wesolowski, Reidenbach & Sadjak, damages of $2,350 from Gunta Law S.C. and other equitable damages. Id. at 21.

In support of the motion, the plaintiff filed fifty-six pages of exhibits, including his Milwaukee County Arrest Detention Report, dkt. no. 40-1 at 1, 4; the probable cause statement and judicial determination (the CR-215), id. at 2-3, 5-6; a January 21, 2020 open records request directed to the South Milwaukee Police Department, id. at 7; a letter responding that the department could not comply with the request because it was still an active investigation, id. at 8; a January 27, 2020 request from the City of South Milwaukee for $9.40 to act upon the open records request, id. at 9; a February 11, 2020 letter providing the requested records, id. at 10; the incident report and supplemental reports, id. at 11-34; property reports, id. at 35-37; a copy of the photo array instructions, id. at 38; the South Milwaukee Police Department waiver of rights form, id. at 39-40; social media posts by Christian Pressley referring to law enforcement as "evil trash" and "paid liars," id. at 41-; and a chart and emails from the plaintiff to defense counsel, id. at 45-55.

The defendants respond that a Rule 11 motion for sanctions is not an appropriate vehicle for resolving a discovery dispute and that the motion itself is grounds for sanctions. Dkt. No. 43 at 2. The defendants say that the plaintiff did not satisfy any of the requirements of Rule 11: he failed to provide the

48

requisite twenty-one-day safe harbor notice under Rule 11(c)(2), he failed to identify a Rule 11(b) violation and he improperly combined a Rule 11 motion with a motion under Rules 26 and 27 and alleged ABA violations over which the court has no jurisdiction. Id. The defendants ask that if the court denies the motion, it award them reasonable expenses including attorney's fees. Fed. R. Civ. P. 11 (c)(2). In support of the motion, Attorney Moore filed a declaration that the plaintiff sent him an email on December 25, 2021 with a copy of the motion for sanctions stating "this will be mailed out on Monday. Merry Christmas." Dkt. No. 44-1. Two days later, Attorney Moore received a notice of filing. Dkt. No. 44-2.

The plaintiff filed a reply brief, asserting that he would be late by a week in providing his final response to the defendants' summary judgment motion (even though summary judgment had been fully briefed months before). Dkt. No. 46 at 1. The plaintiff stated that the defendants had been on notice for months about their misconduct, dating back to an email on April 6, 2021 to Attorney Baynard. Dkt. Id. at 2. The plaintiff urged the court not to get caught up in the "mundane and petty" and instead to focus on the actual facts contained in the plaintiff's motion. Id. at 3. Nevertheless, he spent pages addressing the Christmas day remark. Id. at 5-9. He explained that once he was released from jail, he went to the police station, he knew the officers (having practiced jiu jitsu with them for close to a decade), made the records request, filed a first §1983 suit after the defendants tried to silence him, then filed this §1983 suit because of their allegedly botched investigation. Id. at 9-

49

10. The plaintiff said that after the defendants refused his settlement offer, he learned of the evidence of "PERJURY and MISCONDUCT IN PUBLIC OFFICE" and sought to address what was done to him to make sure it doesn't happen to others. Id. The plaintiff apologized to the court for its having to read his argument in response to the "pathetically petty claim made by the Defense." Id. at 10.

The plaintiff has requested several types of sanctions in a single document. First, he cited Fed. R. Civ. P. 11. Dkt. No. 40 at 1. Rule 11(b) says that when an attorney or unrepresented party presents a pleading to the court, that party is certifying that the information in it is not being presented for an improper purpose, is warranted by law and is factually supported. Rule 11(c) allows a court to impose sanctions if a party violates Rule 11(b). But the rule lays out a very specific procedure a party must follow before filing a motion seeking sanctions for violation of Rule 11(b). Rule 11 contains what is referred to as a "safe harbor" provision explaining how and when a party may file such a motion:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense contention or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees for the motion.

Fed. R. Civ. P. 11(c)(2).

To the extent that he seeks sanctions under Rule 11, the plaintiff's motion is deficient in several ways. He did not comply with the requirement in

50

Rule 11(c)(2) that he file the motion separately from any other motion—he combined it with a request for sanctions under the ABA rules and under Rules 26 and 37 of the Federal Rules of Civil Procedure. The plaintiff did not follow the safe harbor procedure required by Rule 11(c)(2). On December 25, 2021, he notified defense counsel via email that he would be filing the motion and provided them a copy of the motion, but he did not give them the required twenty-one days to take corrective action; instead, he filed the motion two days after giving notice. The filing of the motion does not comply with the safe harbor provision; the rule requires Rule 5 service first and allows the party to *file* the motion with the court only after the twenty-one-day safe harbor period has expired. Even if the plaintiff had filed a separate motion and complied with the safe harbor provision, most of the conduct of which he complains does not involve documents filed with or representations made to the court. Most of his issues with the production of discovery or the alleged behavior of opposing counsel toward the plaintiff during in the depositions do not constitute the types of representations that are sanctionable under Rule 11(b).

Second, the plaintiff cited the ABA Model Rules of Professional Conduct. Dkt. No. 40 at 1. This court decides litigation disputes. It is not the authority that enforces compliance with the rules of ethics. In Wisconsin, the Office of Lawyer Regulation and the Wisconsin Supreme Court enforce those rules, and

the applicable rules are the Wisconsin Supreme Court Rules in Chapter 20 (the Rules of Professional Conduct for Attorneys), not the ABA Model Rules.[9]

Third, the plaintiff cited Fed. R. Civ. P. 26. Dkt. No. 40 at 1. Rule 26 governs discovery in federal court and has numerous subdivisions. The plaintiff did not indicate which provision of Rule 26 authorizes this court to sanction a party. Rule 26(g)(3) allows a court to sanction anyone who falsely certifies discovery disclosures, requests, responses and objections. The plaintiff claims that Attorney "Baynard to the Court in April claimed that all responsive material had been provide to the Plaintiff when she responded to this Plaintiff's first motion to Compel Discovery." Dkt. No. 40 at 10. The defense responded to the plaintiff's motion to compel on May 5, 2021 and Attorney Baynard did not sign that response. Dkt. No. 16. Attorney Baynard did file a declaration in support of that response. Dkt. No. 17. Nowhere in that declaration does she state that "all responsive material had been provided to the plaintiff," or anything to that effect.[10] Even if Baynard had said something to that effect,

_____

[9] The court acknowledges that Wisconsin's Rules of Professional Conduct for Attorneys are modeled on the ABA Model Rules and that many are similar or identical to the ABA Model Rules, but there are differences.

[10] Later in his motion, the plaintiff claims that Baynard had informed the court that the defendants had provided all discovery, and he produced what he stated was a quote from Dkt. No. 17 at 6. Dkt. No. 17 is two pages long—it does not have a page 6 or a paragraph 6, and the court cannot find the language the plaintiff allegedly quoted in that document. The quoted language *does* appear on page 6 of Dkt. No. 16, the defendants' response to the plaintiff's motion to compel, which was not signed by Attorney Baynard. The plaintiff does not explain how the language he quotes from Dkt. No. 16 is false, and it is not a false certification of a discovery demand or response and thus not sanctionable under Rule 26(g).

52

and even if the plaintiff could prove it was not true, Rule 26(g) applies to false certifications of *discovery* demands or responses, not statements in court filings.

The plaintiff claims that in an email exchange, Attorney Moore said to the plaintiff, "You have everything we have." Dkt. No. 40 at 11. The plaintiff provided this email; Attorney Moore appears to have made that statement in response to the plaintiff's questions about the "CR 125," and Moore responded, "I am not sure what you are citing to. Any court submission from anyone else is not something we would have or have to provide. You have everything we have." Dkt. No. 40-1 at 49. The defense has explained this misunderstanding and again, Rule 26(g) applies to false certifications of discovery demands or responses, not misunderstandings in emails.

The plaintiff claims that on page 6 of the defendants' reply brief in support of the motion for summary judgment (dkt. no. 35), Attorney Moore falsely stated that the defendants had produced all requested discovery to him in a timely manner, days before providing him with the unredacted CR-215. Dkt. No. 40 at 16. It is true that in the defendants' reply brief in support of their motion for summary judgment, Moore said that the plaintiff's "assertion that Defendants concealed evidence is inaccurate, as Defendants have produced all requested discovery to Plaintiff in a timely manner." Dkt. No. 35 at 4. It is also true that this statement appears in a brief filed on December 1, 2021, three days before the plaintiff sent the email that clarified what he was seeking and eight days before Moore provided the plaintiff with the unredacted

53

CR-215. The court has addressed the misunderstanding underlying this timeline and again, Rule 26(g) applies to false certifications of discovery demands or responses; a reply brief is not a discovery demand or response.

Fourth, the plaintiff cited Rule 37. Fed. R. Civ. P. 37 addresses discovery-related misconduct. Rule 37 authorizes an award of sanctions when a litigant fails to obey a court order permitting discovery, fails to disclose or to supplement an earlier response, fails to admit what is requested under Rule 36, fails to attend its own deposition, fails to preserve electronically stored information, or fails to participate in a framing a discovery plan. Fed. R. Civ. P. 37(b)-(f). Before filing a Rule 37 motion, the plaintiff must comply with Civil L.R. 37. The plaintiff must file a written certification that he has—in good faith—conferred or attempted to confer with the defense in an effort to resolve the issues without court action. The plaintiff did not file a Civil L.R. 37 certification with his motion for sanctions. Four months *after* he moved for sanctions, the plaintiff filed for the first time a document that he called a Rule 37 certification. That document does not demonstrate that the plaintiff made good-faith attempts to meet and confer with the defendants to discuss discovery disputes or misunderstandings. It is a recitation of the things the plaintiff did that he believes constituted demands for discovery, not evidence of a good-faith attempt to resolve disputes or misunderstandings without court intervention.

Even if the defendants had deliberately refused to turn over evidence—and the record does not support that conclusion—the plaintiff did not comply

54

with the rules in bringing this motion. The court will deny the motion for sanctions without prejudice. Dkt. No. 40.

**V.      Plaintiff's Motion for Reconsideration (Dkt. No. 56)**

Four months after filing the motion for sanctions, the plaintiff filed a motion asking the court to reconsider "motion compelling discovery and to amend timeline and to amend complaint." Dkt. No. 56. The motion does not cite a rule giving the court the authority to reconsider its decision. It does not explain why the court should reconsider its order beyond stating that the plaintiff understands that there are rules that apply but that he had not taken civil procedure at the time he had filed the motion. Id. at 2. He reminds the court that he is representing himself and reiterates that the defendants are concealing evidence and causing delay by "using their knowledge of the law against [his] lack of it." Id. He opines that under that circumstance, "one would think a Court would step in and demand that Justice prevail in their court." Id. The plaintiff suspects that the court may be tempted to view him in an unfavorable light "due to political leanings," because he is a man complaining about how he was denied his rights after a female made allegations of sexual assault. Id. He expresses the hope that the court would "rise above those temptations and allow Lady Justice to lead the way." Id. The plaintiff points to other counties that have charged Polak with criminal conduct, arguing that there is clear evidence that Polak received preferential treatment by the defendants in this case. Id. at 3.

The plaintiff says that he wishes to correct some of the court's misunderstandings. Id. First, apparently in response to court's statement that "[a]s the defendants point out, the plaintiff noticed nine depositions, canceled those depositions . . . and never rescheduled or took those depositions," dkt. no. 55 at 10, the plaintiff says that there were depositions that took place within the discovery period and notes that he has filed them with the court. Dkt. No. 56 at 3-4. Second, the plaintiff disputes the court's repetition of the defendants' account that officers were dispatched "after a report that a female was running away from a male who had assaulted her," dkt. no. 55 at 6, maintaining that he was arrested after he told a woman that he was "tired of her drunken insanity" after which she became mad and called the police "to use them as pawns to gain revenge for [the plaintiff's] daring not to like her and keep taking her to bars." Dkt. No. 56 at 4. Third, he recounted evidence he believed the police department had prior to his arrest (which he says they admitted in depositions) showing that Polak's accusations against him were false. Id. at 4-5. Fourth, he challenged the defendants' assertion that the 911 call was autodeleted, arguing that the call was deleted because it would have proven that Polak's claims were false. Id. at 5. The remainder of the motion consists of the plaintiff's arguments as to the merits of his claims. Id. at 5-7.

The plaintiff attached to this motion the same exhibits he has attached to other motions: the notice of injury and claim, the emails to defense counsel, the incident report, the probable cause determination and the complaints filed against Polak. Dkt. No. 56-1.

56

The plaintiff also filed a document that he called a Rule 37 Certificate of Good Faith, in which he says he has made a "multitude of attempts" to obtain full and complete discovery. Dkt. No. 57 at 1. He says his first attempt was immediately after the incident, when he went to the police station and asked for evidence. Id. He says the second attempted was the open records request, which he says "resulted in 20CM1332 Pressley v City of South Milwaukee, Milwaukee County." Id. He says that case resulted in certain videos being released but that other evidence was privileged or he hadn't made a specific request for it. Id. He claims that since he filed this lawsuit, the defendants have refused to provide any evidence other than police reports and videos that did not include Polak speaking. Id. The plaintiff says the district attorney in Pressley v. Polak, 21CM4981 had no problem releasing (under subpoena) the videos of Polak making allegations against the plaintiff. Id. at 2. The plaintiff says he received those videos in October of 2021 making it possible for him to depose the defendants. Id. In addition, the plaintiff says that the defendants continue to refuse to release the employment records of the officers involved. Id. According to the plaintiff, the defendants lied to the Milwaukee County Circuit Court in 20CM1332 when "counsel for the defense falsely claimed all material responsive to certain items were given" to the plaintiff, again referencing the Statement of Probable Cause and Judicial Determination. Id. Finally, the plaintiff argues that the court's delay in ruling on the motion to compel has put him at a disadvantage, allowing the defendants to file claims that they "have a privilege that does not exist;" he says the court has failed to

57

acknowledge that and has prevented him from "reasonably fair proceedings." Id. at 2-3.

"[T]he Federal Rules of Civil Procedure do not expressly recognize a 'motion to reconsider.'" United States v. Lewis, No. 17-cr-191-pp, 2019 WL 3068310, at *1 (E.D. Wis. July 11, 2019) (quoting United States v. Roth, No. 10 Misc. 001, 2010 WL 1541343, at 2 (E.D. Wis. April 19, 2010)). Parties often use this catch-all phrase to refer to motions to revise non-final orders under Federal Rule of Civil Procedure 54(b), motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e) or motions for relief from a judgment or order under Federal Rule of Civil Procedure 60.

Rule 54(b) says that in a case that presents more than one claim for relief, a judgment that does not adjudicate all the claims and liabilities of all the parties "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment, thereby bestowing sweeping authority upon the district court to reconsider a [new trial] motion").

Rule 59(e) allows a court to alter or amend a judgement if the party files the motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of General Motors Corp., 51

58

F.3d 746, 749 (7th Cir. 1995) (citing <u>Charles v. Daley</u>, 799 F.2d 343, 348 (7th Cir. 1986)). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." <u>Harrington v. City of Chi.</u>, 433 F.3d 542, 546 (7th Cir. 2006) (citing <u>Bordelon v. Chi. Sch. Reform Bd. of Trs.</u>, 233 F.3d 524, 529 (7th Cir. 2000)). A party moving to alter or amend a judgment under Rule 59(e) must "clearly establish" one of those two grounds for relief. Id. (citing <u>Romo v. Gulf Stream Coach, Inc.</u>, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)). "Rule 59(e) 'does not provide a vehicle for a party to undo its own procedural failures . . . .'" <u>Id.</u> (quoting <u>Bordelon</u>, 233 F.3d at 529).

A party may ask a court to grant relief from a final judgment or order under Rule 60(b) within a "reasonable amount of time" after the court issues the final judgment or order, but if the moving party seeks relief under Rule 60(b)(1), (b)(2) or (b)(3), it must make its motion "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Rule 60(b) describes several bases for such relief, including

> (1)    mistake, inadvertence, surprise, or excusable neglect;
>
> (2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)    the judgment is void;
>
> (5)    the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

59

(6)     any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." Harrington, 433 F.3d at 546 (quoting Karraker v. Rent-A-Center, Inc., 411 F.3d 831, 837 (7th Cir. 2005)).

The court has not issued judgment on one or all of the plaintiff's claims, so neither Rule 54(b) nor Rule 59(e) provide a basis for the court to reconsider its ruling. The court will treat the motion as a Rule 60 motion. The plaintiff hasn't argued, however, that any of the Rule 60 reasons for modifying the order apply. The plaintiff continues to argue the merits of his case rather than the merits of the court's rulings on his motion to compel, his motion for sanctions and his motion to extend the discovery deadline. Dkt. No. 56. For example, he attached the criminal complaints filed in other counties against Polak, suggesting that these criminal cases show that she has a pattern of drinking and "victimizing people." Id. at 3. That may constitute evidence to support his substantive allegations, but it has nothing to do with the court's ruling that the plaintiff had not complied with the rules in filing the motion to compel, or that there was no basis for sanctions or to extend the discovery deadline.

Rule 60(b)(1) allows a court to correct mistakes in an order. The plaintiff asks the court to correct facts: he says that he took depositions before the discovery deadline and filed them with the court, that he wasn't arrested after a woman ran from him but rather after she called the police as revenge because he wasn't interested in her, that officers admitted in depositions that the videos and witnesses didn't show sexual assault and that the police department

60

deleted the 911 call to conceal evidence. The record supports the plaintiff's contention that he conducted depositions on November 29 and 30, 2021, before the November 30, 2021 discovery deadline. The plaintiff's other arguments are disputes with the defendants' version of facts, which the court was only recounting in its order. Those were not "mistakes" that the court made in its ruling; the court made clear that it was recounting information provided to it by the defense. The plaintiff disagrees with the defense version of events, as is his right. But there is no mistake for the court to correct in that regard.

The court denied the motion to compel because the plaintiff did not follow the requirement that he meet and confer with counsel, and certify in writing that he'd done so, before filing it. The court denied his motion for sanctions for the same reason. The court denied his motion to extend the discovery deadline because he didn't identify the discovery requests that he claimed the defense had not responded to or the allegedly problematic responses. The plaintiff has not argued otherwise. He argues only that the defendants are using their superior knowledge of the law to best him and that the court should rise above the temptation to be biased against him because he is a man challenging a woman's claims of sexual misconduct.

The plaintiff's argument that he isn't knowledgeable of the law as the defendants and that they are using that against him contrasts with his earlier assertions about and reliance on his undergraduate legal training. But even if the plaintiff had had no legal training at all, the Seventh Circuit has

"repeatedly held" that "even pro se litigants must follow procedural rules." Collins, 554 F.3d at 697 (citing Pearle Vision, Inc. v. Room, 541 F.3d 751, 758 (7th Cir. 2008)); Cady v. Sheahan, 467 F.3d 1057, 1061 (7th Cir. 2006) ("the Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure") (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). As for the plaintiff's concerns that this court may view him with a jaundiced eye because he is a man asserting that a woman made false claims of sexual misconduct against him, it is the court's job to set aside its personal views—if it has any—and decide the legal issues before it. The merits of the plaintiff's claims—that Polak lied and the defendants knew it but arrested and detained him anyway—are irrelevant to the question of whether the plaintiff followed the rules that all other litigants must follow when he filed the motions that the court denied.

The court will not reconsider its ruling. But the court again notes that the plaintiff repeatedly has asserted that he does not have all the discovery to which he is entitled. The factual basis for that argument has been disclosed over the course of briefing all his pending motions. The court explained that it is going to require the plaintiff to list—specifically and concisely—the items of discovery that he believes he has not received. If it appears that more discovery is necessary, the court will consider reopening the discovery period for a limited time.

## VI. Defendants' Motion for Summary Judgment (Dkt. No. 23)

Finally, the defendants moved for summary judgment on the claims against the City of South Milwaukee because the complaint includes no allegations that would support a finding of municipal liability. Dkt. No. 24. The defendants also argue that the claims against Lieutenant Jason Walker must fail because the plaintiff cannot show that he was denied access to anything or that Walker acted with any sort of discriminatory motive. Id. at 2.

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). Summary judgment is the proverbial "put up or shut up" moment in a lawsuit "when a party must show

63

what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).

The plaintiff's response to the motion did not comply with Civil L.R. 56(e)(2), which describes what the non-moving party must file in opposition to a motion for summary judgment. Rule 56(b)(2) provides that a party opposing a motion for summary judgment must file:

(A) a memorandum of law;

(B) a concise response to the moving party's statement of proposed findings of fact that must contain

(i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and

(ii) a statement, consisting of short numbered paragraphs of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph. . . .; and

(C) any opposing affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

Civil L.R. 56(b)(2).

The defendants attached to the motion for summary judgment Civil L.R. 56 as required by Civil L.R. 56(a)(1)(B). Dkt. No. 23-1. The motion itself explained that "Defendants hereby place Plaintiff on notice that any factual assertions contained in the Declarations accompanying this Motion will be accepted by the Court as being true unless the Plaintiff shows his own Declaration(s) or other documentary evidence contradicting those factual

assertions." Id. at 1-2. The plaintiff did not respond to each of the defendants' proposed findings of fact as required by Civil L.R. 56(b)(2)(B). He did file a declaration.

As the court has explained, "a court has discretion to enforce its local rules, even against a *pro se* litigant." Turner v. Cox, 569 Fed. App'x. 463, 467 (7th Cir. 2014) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). A court acts within its discretion when it "concludes that [the *pro se* plaintiff's] filings failed to comply with local rules and as a consequence essentially accept[s] the defendants' proposed facts as true." Id. Even if the court were to consider the plaintiff's declaration, it does not address most of the defendants' proposed findings, which means the court has the discretion to deem them admitted. See Fed. R. Civ. P. 56(c); Civil L.R. 56(b)(4).

But the court has noted that because of the way the scheduling order was structured and because of the way discovery played out, the case is in an odd procedural posture. When the parties briefed the summary judgment motion, they did not have the deposition transcripts; the depositions had not even taken place when the defendants filed the motion and when the plaintiff responded. The plaintiff did not have the unredacted CR-215 when he responded to the summary judgment motion. The plaintiff has insisted repeatedly that there is other discovery he is missing, although he has yet to identify it. The court acknowledges that in ruling on several other motions, it has relied on the fact that the summary judgment motion has been fully briefed

65

Case 2:21-cv-00148-PP   Filed 08/23/22   Page 65 of 67   Document 58

for some time. But the fully-briefed motion does not encompass what has transpired.

As the court has stated, there may be evidence in the deposition transcripts or in the CR-215 that could impact the summary judgment arguments. If, as the plaintiff insists, he is missing some discovery, that discovery could impact the summary judgment arguments. The court is going to deny the summary judgment motion without prejudice. Once the court has determined whether any further discovery is necessary, it will set a date by which the defendants may refile the summary judgment motion or file a revised summary judgment motion, as well as a response date for the plaintiff and a reply date for the defendants.

## VII. Conclusion

The court **DENIES** the plaintiff's motions for leave to file an amended complaint Dkt. Nos. 32, 49.

The court **DENIES the** plaintiff's motion for leave to file delayed responses. Dkt. No. 37.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 40.

The court **DENIES** the defendants' Rule 7(h) expedited motion for leave to file a sur-reply to dkt. no. 42. Dkt. No. 48.

The court **DENIES** the defendants' motion to strike the plaintiff's response to defendants' motion for leave to file a sur-reply. Dkt. No. 51.

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 56.

The court **DENIES WITHOUT PREJUDICE** the defendant's motion for summary judgment. Dkt. No. 23.

The court **ORDERS** that the plaintiff must file an itemized list of the discovery he believes he is missing—a list which complies with this order—in time for the court to *receive* it by the end of the day on **September 16, 2022**.

The court **ORDERS** that if the plaintiff files the itemized list in time for the court to receive it by the end of the day on September 16, 2022, the defendants must respond in writing by the end of the day on **October 7, 2022**.

Dated in Milwaukee, Wisconsin this 23rd day of August, 2022.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge