

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

2022 OCT 21 ⊃ 2: 01

Christian Pressley,                  )
                                     )
                Plaintiff,           )
                                     )
v.                                   )        Case No.: 2021-CV148
                                     )
City of South Milwaukee et. al.,     )
                                     )
                Defendants,          )

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Even though I loose on technical grounds, justice has no knowledge of technicality. But this Court does, and I understand and respect the need for such rules even though they cut at the decency of humanity.

The events that have led up to this moment compelled me to go back to college and learn law, even if at the most basic of levels. I have gone thru this because I know that truth is justice and I have been wrongfully treated. I write this being a business owner and working 7 days a week.

Plaintiff, pro se, moves Court to find in favor of Plaintiff for false imprisonment and violation of civil rights perpetrated upon this Plaintiff by the Defendant and others this Court will not allow me to include in the Complaint.

In this Motion, Plaintiff will set forth rule of law, explanation, application and then conclusion, arguing the facts that are demonstrable as exhibits attached. Plaintiff will demonstrate that by the preponderance of the evidence, no reasonable trier of fact would find in favor of the Defendant and its Officers for the accusations contained within the Complaint. Plaintiff will demonstrate that there is no material fact in dispute once the video evidence and witness testimony is considered.

Plaintiff wishes to make clear that there is no ill will towards Robyn Polak. I believe she is in need of significant professional assistance with her addictions and mental illnesses. While her conduct is irreprehensible, she was used by the corrupt law enforcement officers of the City of South Milwaukee and led further down the path of her mental illnesses. She subsequent the happenings of this case, just a few months later, was reported to have sexually assaulted a Slinger Police Officer by grabbing his genitals, of which she was convicted of disorderly conduct for, *See* State of Wisconsin v Robyn Polak 2020CM000734 Washington County. She was reported by a concerned citizen to have been seen drunken, trying to get her 4 year old son buckled into a car seat before attempting to drive off. She also has been recently convicted of more drunken madness when she assaulted an intimate partner at a bar in Pewaukee, *see* State of Wisconsin v Robyn Polak 2021CM002105 Waukesha County.

My belief, is that if Polak had been properly arrested for her crimes of Obstruction against myself, that she would not have victimized anyone else, and she would have sooner come to reckoning with her downward spiral. The course of conduct of the Defendants robbed her of that opportunity.

Plaintiff will demonstrate that Robin Polak did make false statements that were known by the Defendants to be false, that Polak did so with malicious intent to cause injury to the Plaintiff and

that the Defendants were aware of the malicious intent of Polak, and that in fact there was substantial injury to the Plaintiff due to the known false statements made by Polak and the willful disregard of the facts by the Defendants during their investigation. Plaintiff will demonstrate that the Defendants knew that Polak was making those false allegations with malicious intent and that they then willfully repeated known, proven falsehoods to a court official with the intention of causing this Plaintiff loss of liberty.

Plaintiff will demonstrate these facts by way of video evidence of Polak making the allegations, officers police reports using the allegations to then arrest and keep captive the Plaintiff for 2.5 days in jail. Those allegations were also used by the South Milwaukee Police Department to create a Probable Cause Determination document in which it was reported to a court official that I sexually assaulted Polak at the Tap Room Bar, which will specifically be proven *beyond any doubt to be a fabricated* allegation by Polak.

Plaintiff will present depositions (already in E.D. Court Record) of the same officers who then admit under oath that Polak did in fact make false allegations of sexual assault and that there was no video evidence or witness statements that corroborated any allegations made by Polak. In those depositions officers will claim that they had probable cause only because they could not prove the Plaintiff to be innocent due to a lack of video evidence on all occasions, even though each instance of video evidence proved innocence of the Plaintiff and Obstruction on part of the accuser, Polak.

Plaintiff will present a police report, created by the SMPD before my arrest, that also states that at one location, the Tap Room, the allegations of sexual assault made by Polak, were in fact known to be fabricated, in complete contradiction to the CR-215 Probable Cause Determination document that stated under oath that I did sexually assault the Polak at that specific location.

Page **3** of **25**

Plaintiff will also demonstrate that witnesses on scene gave plainly opposite statements (compared to Polak) as to what took place the night of the incident, when according to Polak those very witnesses were somehow trying to assist her in seeking safety from the Plaintiff.

Plaintiff will demonstrate how *all facts relevant were known by the Defendants before any arrest of the Plaintiff was made and before the Probable Cause and Determination document was created*. This knowledge of those facts and evidence, establish overwhelming basis for the actions of the Defendant's to be willful disregard for the truth and their duties as well as willful disregard for the rights of the Plaintiff. The accumulation of the facts is clear evidence of animus, on part of the Officers.

Evidence list is at the end of this Motion.

## I.    STATEMENT OF FACTS

"Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 318, 106 S.Ct. 2548. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (1986)." *Anderer v. Jones*, 342 F. Supp. 2d 799, 801 (E.D. Wis. 2002)

January 9th 2020, Plaintiff drove to Polaks residence in South Milwaukee around 6pm, they then together went to 7 business establishments eating and drinking. The night ended with Polak getting out of the Plaintiffs car outside of Powers Bar, angry that the Plaintiff did not want to keep drinking and telling her he didn't like her (according to Plaintiff), and according to Polak ended with either her jumping out of the Plaintiffs car, tricking him to stop so she could get out, or one of the other versions she gave to law enforcement.

In chronological order, the parties went from outside her residence to Café Central. Then walked to Sugar Maple Bar, then walked to Hi Hat Bar, then walked to Tonic Bar, then drove to Tap Room Bar, then walked to Caseys Bar, then drove to Bottoms Up, then drove to Powers Bar that was closed, then got in car when Polak then became enraged that Plaintiff both refused to go to another bar and told her he didn't like her.

While the incident pertains to allegations of sexual assault in one single night, there are allegations of numerous individual attacks at numerous locations. For the sanity of the Court, I will list the accusations in chronological order with name or description of the location of the allegation made, what was alleged, and to whom (receiver) she (Polak) made each specific allegation to and list what evidence, (video or witness statement) is available for the Court to consider. All evidence is included on flash drive with an Evidence List at the end of this filing.

| LOCATION | ALLEGATION | RECIEVER | EVIDENCE |
|---|---|---|---|
| Sugar Maple Bar | Grabbed Vagina | Officer Luczak (video interview) | None to consider other than witness statement of Owner made to Investigator of Plaintiff. That evidence is not present as it is heresay. Owner would be witness at trial. |

| | | | |
|---|---|---|---|
| In car en route to Tap Room | Asked to grab vagina | Officer Luczak on body cam interview | None to consider other than video footage of demeanor of parties as recorded at Tap Room minutes later. |
| Tap Room Bar | Grabbed Vagina and Breasts | Officer Luczak on body cam interview | 1. Tap Room Security Footage. *Plaintiff Exhibit 10-15* <br> 2. Depositions of Luczak, (*Plaintiff Exhibit 19*) Seifert and Verhagen (*Plaintiff Exhibit 20*) admitting no such attack took place <br> 3. Police Report of Officer Seifert reporting that no such assault took place, *Plaintiff Exhibit 17.* |
| Casey's Bar | Grabbed Vagina, Defendant was in distress, witnesses were attempting to get her away from Plaintiff | Officer Luczak on body cam interview | 1. Casey's Security Footage *Plaintiff Exhibit 22 and 23* <br> 2. Officer Rodman Body cam interview of bartender and owner *Plaintiff Exhibit 1-3* |
| In car en route to Bottoms Up | Grabbed breasts and vagina while driving | Officer Luczak on body cam interview | None to consider other than demeanor |

| | | | of parties less than a minute after event as captured on video at Bottoms Up |
|---|---|---|---|
| Bottoms Up | Was in distress needing help with bartender trying to assist. Bartender told Plaintiff to get away from Defendant. | Officer Luczak on body cam interview | 1. Security Footage of Bottoms Up *Plaintiff Exhibit 16* 2. Officer Rodman body cam interview of bartender *Plaintiff Exhibit 1* |
| In car en route to Powers Bar | Penetrated vagina, forced himself (kissing) and groping while driving | Officer Luczak on body cam interview | None to consider other than degree of complexity of allegations and preceding video recorded demeanor of parties and pattern and practice of Defendant to fabricate allegations. |

Also given the significant number of allegations and the video that is available regarding those events, I have included a table that lists key specific allegations/moments that can be analyzed by the Court which are plain evidence in contradiction to Polak's specific allegations.

PLEASE VIEW THE VIDEOS AND READ THE EVIDENCE DOCUMENTS TO VERIFY WHAT IS CLAIMED WITHIN THESE TABLES.

| Allegation Made by Polak | What Plaintiff's Evidence Shows |
|---|---|
| | |
| **TAP ROOM BAR** Polak alleged that Plaintiff grabbed her vagina and breasts at the Tap Room | **SECURITY FOOTAGE** as located on Plaintiff Exhibit 10-15, TAP ROOM CAM 4 and 11 |

| | |
|---|---|
| Probable Cause Document CR-215, included in Plaintiff Evidence List, states "At the Tap Room Bar, Pressley groped Polak's vagina from the outside of her clothing approximately 3-4 times" | 9:55:53 She puts hand on my thigh I give no response (Cam 4) |
| | 9:56:53 She removes her hand from my thigh after I rebuff her advance. She gets visibly agitated with her movements. |
| Body Cam Footage Interview with Luczak as included in Plaintiff Evidence List under Luczak Body Cam 1 | 9:57 She sends me naked pictures of herself, her vagina and her breasts. See Plaintiff Exhibit Defendants Picture and watch Interview of Plaintiff at |
| 7:47 says that I was groping her at Tap Room. She is very clear, recollecting the bartenders and how she was telling me to stop it and that "it was awful". She is clearly cognizant she is alleging this took place at Tap Room and is not confused as to the location. | 10:00:37 she gets visibly agitated when I look at the pics in shock. |
| | 10:02:04 She puts her head on my shoulder, I do not reciprocate, she leans away |
| | 10:02:56 She puts her hand on my chair back |
| 7:47 says I told her I was sorry and was "whispering" in her ear. | 10:09:35 she kisses my cheek. Only response I give is I raise my glass to cheers. She leans away. |
| 7:49 "he literally was like pow pow pow" as she demonstrates my hand forcefully going down her crotch area. Claims 3 to 4 times it happened at Tap Room. | 10:09:52 She rubs my back, gives me a hug but I do not reciprocate. She leans away from me again. |
| 7:49 now she claims it was "a couple times, not a lot". Says she doesn't want to talk about it and says, "this is why I am in counseling". | 10:15:07 She puts her head on my shoulder, but I do not reciprocate or move at all |
| | 10:22:40 She puts her head on my shoulder, but I do not reciprocate or move at all |
| | 10:26:45 She dance moves after taking a shot, then leans over to kiss me and I lean away from her. |

| | |
|---|---|
| | 10:27:20 I lean over and give her a peck |
| | 10:27:43 she puts her hand on my thigh |
| | 10:27:49 she puts her hand on my thigh while leaning toward me and my leaning away |
| | 10:39:07 she hits me on my shoulder and I provide no response |
| | 10:42:32 She puts her arms around me tries to kiss me I refuse |
| | 10:42:44 She attempts another kiss no response then she puts her hand on my thigh |
| | 10:44:26 She has some sort of fit – I lean away and raise my hands in defense |
| | 10:44:52 She reaches around me and puts arm around me - I give no response |
| **CASEY'S BAR**<br><br>Allegation - that Plaintiff assaulted her sexually and that her friends and the owner and bartender were trying to assist her in getting away from me and that I forcibly made her leave the bar<br><br><br>Luczak Body Cam 1 @ 7:50 claims her friends at Caseys were telling her to leave me that I am a "bad guy"<br><br>Luczak Body Cam 1 @ 7:50 officer asks her if I did anything to her at Casey's | No one reported during interviews that I was assaulting her, and no video ever displays any interactions between us that could even possibly have been sexually assaulting her or that the people in the bar were trying to keep her away from me.<br><br>Also, when we left, she walked out before me. I never grabbed her by the wrist in the video. Interview with bartender and Owner fail to corroborate a single claim made by Polak.<br><br>Rodman Body Cam 2 at 7:19, 7:20, Owner states no one |

| | |
|---|---|
| and she says "oh yeah…" claiming I was groping her butt and trying to grab her vagina | was attacked at his bar that night |
| Luczak Body Cam 1 @ 7:51 admits that I was telling her I was going home | Rodman Body Cam 4 at 8:07:47 Bartender explains that nothing was unusual between Plaintiff and Polak. |
| Luczak Body Cam 1 @ 7:51 claims her friends were telling her not to go with me | Officer Rodman in Cam 4 at 8:08 states that the attack took place at Bottoms Up apparently convinced no attack took place at Casey's. |
| Luczak Body Cam 1 @ 7:51 says I grabbed her by the wrist in Casey's and was telling her "Lets go" | |
| Luczak Body Cam 1 @ 8:40 she is now saying that all her girlfriends were there and telling her to "loose him". | |
| | |
| **BOTTOMS UP BAR** Allegation - Polak alleged that the Bottoms Up Bartender tried to protect her from me and told me to get away from her. | Plaintiff and Polak walk in at 12:39:49 according to video time stamp, she is walking in front of me by about 3 feet, both of us walking normally nothing unusual |
| Interview with Luczak Body Cam 1 | She sees a girl walks up to her and taps her on her back and gives her a long hug and I continue to walk to the end of the bar normally and sit down at a stool. |
| 7:54 Polak claims Bottoms Up bartender told Plaintiff to leave her alone, but then after cop repeats what she said she changes it and says no she didn't say it, but then the cop interrupts her and offers to her that it was some sort of "vibe" that the bartender was giving. She latches on to the cop telling her it was about a | Polak converses with the girl sitting at the bar for a sentence or two, seemingly having a good interaction with her, then walks away to go sit down by me. |
| | I had sat apart from the closest guy to the door from where I sat down. Polak |

| | |
|---|---|
| "vibe" thing. Then says she can't remember. But then she says that Jackie "kept [her] safe". Jackie is the bartender. | instead of sitting down next to him, sits down on the other side of me away from everyone else but me. Yet she has told LEO that I was violently assaulting her in the car on the way to Bottoms Up what would be only seconds earlier. |
| | The Bartender is staying by the main grouping of people and never comes up to us. I pull out a bill of money and flop it on the bar. Polak sits down next to me, and we both seemingly are in a normal fashion getting comfortable in the stools. |
| | 12:40:29 the bartender is all the way at the other end of the bar, tending to other patrons. Polak and I are sitting at the bar still, my hands are visibly on the bar top, she doesn't seem to be touching me or anything unusual. |
| | 12:40:55 there is a clear brief conversation between her and I in which it seems she makes a comment that might be for someone else down the bar because she leans forward to speak. The bartender is still at the other end of the bar taking care of and talking with other patrons. I grab the money I put on the bar as Polak gets up out of the stool and starts walking to the door ahead of me. Polak is walking way ahead, I follow and turn to look at everyone else and raise my hands up like I am confused as to what is going |

| | on with Polak. Polak turns as she is walking away and out to say something very brief to the Bartender which the bartender looks at her and might say a quick response but it isn't clear. |
|---|---|
| | The girl that Robyn came up to and hugged at the beginning turns around and seems to be confused or in some sort of disbelief as to what is going on and might have said something to me as I slow down to look at everyone, in which as I am walking to the door, I have both my hands up like I am displaying confusion not knowing what is going on with Polak, making it clear that I am expressing disbelief to them as to the nature of the situation with Polak. |
| | The blonde girl at the bar turns her head a couple times back at us walking out and apparently is having a conversation with the bartender and the people next to her, seamingly about what just took place. |
| | Door shuts behind me at 12:41:09 |
| | Plaintiff and Polak were there at Bottoms up a TOTAL of 1:19 seconds |
| | |

## II.    RULE OF LAW

""Probable cause has been defined as "facts and circumstances `sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein,* 420 U.S. at 111-12, 95 S.Ct. 854 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see United States v. Rucker,* 138 F.3d 697, 700 (7th Cir. 1998). The rule of probable cause is a "practical, nontechnical conception" that affords the "best compromise" between the interests of individual liberty and effective law enforcement. *Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Gerstein,* 420 U.S. at 112, 95 S.Ct. 854 (citation omitted). Contrary to what its name might seem to suggest, probable cause "demands even less than `probability,'" *United States v. Moore,* 215 F.3d 681, 685 (7th Cir. 2000) (quoting *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir. 1992)); it "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Id.* at 686 (citation omitted)" *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)

"Applying this standard, we have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause.*See Tangwall v. Stuckey,* 135 F.3d 510, 520 (7th Cir. 1998); *Hebron,* 18 F.3d at 422; *Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 439 (7th Cir. 1986) (holding that a police officer had probable cause to arrest an alleged shoplifter based upon the uncorroborated report of a single security guard, and stating that "[w]hen an officer has `received information from some person — normally the putative victim or eye witness — who it seems reasonable to believe is telling the truth,' he has probable cause")" *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)

"[T]he police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." Tangwall v. Stuckey, 135 F.3d 510, 517 (7th Cir. 1998)

### III.    ARGUMENT

Polak is the accuser and according to the case law, one accusation from one accuser is all that law enforcement needs for probable cause. But there is one caveat, that being that the accuser must be credible. This case and the allegations I have made against the officer's hinges predominantly on the credibility of the accuser and the officers at that time knowledge of the accuser's credibility and how they acted in response to the knowledge that the alleged victim was overwhelmingly discredited.

Page **13** of **25**

Fortunately, this case is rather simple as to the credibility of the accuser, as known by the officers at the time of arrest, for it was not only known to them, but even reported by them in their police report, see Seifert Police Report and Seifert Deposition.

Polak makes many allegations, but the allegations at the Tap Room, Casey's and Bottom's Up are what I will focus on as there is ample, direct and witness evidence that demonstrates Polak to have plainly fabricated her allegations.

Once a Trier determines that Polak has a character for untruthfulness and had engaged in a pattern of dishonesty the night of the incident when cameras and witnesses were present, the fact is then overwhelming that Polak spoke more of the same lies when cameras were not present. This was the credibility that the officers must ascertain as if credibility of the accuser is a component of probable cause, they then logically can not ignore it.

Tap Room Allegation–

While at the Tap Room, there are multiple security footage cameras in which the physical movements of the Plaintiff and Polak are clearly visible. Camera 4 is a view from behind us that clearly shows when Polak touches me sexually (Places her hand on inside of my thigh), romantically (rubs my back and makes multiple attempts to kiss me) and violently (has a clear outburst and hits me). Polak admits to Officer Luczak that she was mad that I wasn't paying her enough attention throughout the night See Luczak Body Cam at various times. At no time does the Plaintiff grab Polak's body, any part of her body, let alone her vagina and breasts. This fact was also admitted to by Officer's Luczak, Verhagen and Seifert in depositions, see Plaintiff Exhibit's Deposition of Luczak, Verhagen, and Seifert.

Officer Seifert, filed a police report stating that at the Tap Room this Plaintiff never grabbed the Defendant's vagina or breasts at the Tap Room like she claimed. See Plaintiff Exhibit "Police Reports" page 24. The allegations made by Polak in her interview which was recorded by body cam with Officer Luczak, were very clear and unambiguous. She stated that I grabbed her vagina 3-4 times and she demonstrates to Officer Luczak saying "pow pow" as she gesticulates with her hand going down to an imaginary persons crotch sitting next to her. See Luczak Body Cam 1 at 7:47-49.

Officer Seifert also admits under oath as to the veracity of his police report. See Plaintiff Exhibit Deposition of Seifert pages 20-23 and specifically page 25 line 22 in which he states "Not in the video" regarding the question as to whether or not the Defendant was sexually assaulted by the Plaintiff in the video of the Tap Room. It is important to note that the videos of the Tap Room show every second of the parties, while they were in the establishment, with absolutely no blind spots or times. Hands of the parties are completely visible and at no time out of camera when they are together as there is not just the footage from the camera from the rear, but a camera from the side that was recording in tandem and could see my hands when from the rear view they were not visible. File 1 is the beginning in which we walk in and sit down. File 2 is the bulk of the time there and File 3 is the end in which we walk out. We are at all times at the bar in the clear view of the cameras other than when we go to the bathrooms individually. So at no time are we out of site together in which Polak could have been assaulted at the Tap Room by the Plaintiff. This goes well beyond preponderance of the evidence and meets the beyond any reasonable doubt standard. If the facts go beyond reasonable doubt as to innocence, then there is no manner of plausibility for probable cause to arrest based on that allegation. Furthermore, if the accuser is proven to be a liar about the topic of sexual assault with the person accused on the

very same night, then probable cause is unreasonable to ascertain without evidence to support the allegations.

It's not that she said I assaulted her at the Tap Room, and there being no clear evidence that the allegation was fabricated, it's that there is clear evidence that I not only did not sexually assault her, but never touched her with my hands.

Also, the video demonstrates Polak to have been repeatedly making overt sexual attempts, seeking reciprocation to which the video clearly demonstrates reluctance if not clear denial of her advances by the Plaintiff and her clear agitation at the Plaintiff's ignoring of her advances. In interviews with Officer Luczak, Polak admits multiple times, that she was upset that I was ignoring her.

It's not that she said I sexually assaulted her thru a long night of multiple occurrences, and she may have become confused as to where she was, making an honest mistake in her recollection as to location; she in the interview recalls the bartenders and how she got up to use the bathroom and discussed how well she knows the Tap Room and its owner. Polak as is evinced by her statements knew exactly where she was, regarding her allegations of the Tap Room. She did not make an honest mistake as to location that could innocently explain away the egregious discrepancy between her allegations and what is demonstrated by the video evidence. She clearly knew she was alleging that she was attacked at the Tap Room, that attack resulting in her getting up to go to the bathroom to allegedly get away from her alleged attacker.

It's not that she was confused as to what physically took place, as she so clearly gesticulated her hand and stated "pow pow" expressing how violent the attack was. See Luczak

Case 2:21-cv-00148-PP   Filed 10/21/22   Page 16 of 25   Document 64

Body Cam 1 at 7:49. She knew what she was alleging; a sexual assault, specifically of my allegedly grabbing her vagina.

However, what is evinced by the video of the Tap Room, and corroborated by the photo evidence, and verified by Officer Seifert interrogating the Plaintiff, was that Polak sent a nude photo of her vagina which the Plaintiff gave a less than desirable response when he viewed it next to Polak. She was seeking acceptance by the Plaintiff so much to the point while sitting next to him send him a nude picture of her vagina.

Polak was injured (if that word can be used) by the Plaintiff not liking her, and more egregiously not liking her vagina picture, not by the Plaintiff assaulting her. So, when she was recounting her alleged sexual assault, she was expressing her hurt that she suffered at the Tap Room when the Plaintiff rebuffed her advances and disliked her vagina picture. The Officers actions in effect, were enforcement of a disgruntled woman making sure that no man dare not like her vagina picture.

Casey's Allegation–

Polak claimed that I was groping her butt and trying to grab her vagina yet at no time does the video demonstrate this. She claims that people were there trying to protect her from me but the bartender in a body cam recorded interview, just an hour later, stated that she witnessed nothing unusual. See (Rodman Body Cam 4), The owner also stated at that same time, that if any such assault was taking place that he would have known and done something. See Rodman Body Cam 4 at 8:06:09. That owner was as evinced by the Casey's Bar Footage often standing next two both the Plaintiff and Polak, at times even conversating with them together.

The video footage, Plaintiff Exhibit Casey's Footage 1 and 2, shows myself and Polak apart from eachother most of the time, to which if she was in distress, she could have easily been helped. The video footage also shows when we leave, that I do not grab her wrist like she alleges, just one more distinct allegation of Polak that is proven to be fabricated. See Luczak Body Cam 1 at 7:51 in contradiction to Casey's Footage 2 at 13:56. Polak is surrounded by other patrons the minutes leading up to the Plaintiff and Polak leaving the bar. The most the Plaintiff does is tap on her shoulder at one point. My hands are mostly in my pockets and I am not seen grabbing her then, nor am I seen grabbing her any time previous in the night. Never at any point does the Plaintiff demonstrate behaviors with Polak that corroborate the context of a man that supposedly is trying to attack her every chance he gets as she basically alleges.

Bottoms Up Allegation–

At Bottoms Up she alleges that the Bartender was trying to get me away from her and "save" her from me. The Bartender however in body cam interview with Officer Rodman, less than an hour later, informs him that Polak was banned from that establishment for "forcfully", "making out" and "pulling" on other patrons. See Rodman Body Cam 3 at 7:35. She also states that Polak was out of control drunk and left angry and yelling at her (the bartender), *i.d.* at 7:36. The bartender stated that Polak left the bar "mad at [her]" Rodman Body Cam 4 at 7:36:21. At 7:36:39, the bartender is telling officer Rodman how her and the other bartender were already discussing how to "short pour" Polak due to her past issues with being drunk and acting out of control and how the bartender could tell right away that Polak was extremely drunk.

The bartender stated nothing unusual about me. The video evinces that this Plaintiff and Polak were in the establishment a total of ONE MINUTE AND NINETEEN SECONDS. The video evinces myself sitting down next to Polak, putting money on the bar, then Polak leans

forward and seems to yell at the bartender, she gets up to walk out, and I walk out after her with my hands raised in confusion when the other people are reacting to Polak's outburst. See Bottoms Up Footage.

Officers willfully omitted and disregarded what the Bartender's and especially from Bottoms Up reported to them. Given the clear allegations from Polak that those persons were trying to protect her from the Plaintiff, and how incredibly opposite those witnesses statements were, in and of itself makes Polak an accuser that lacks credibility.

We have video and witness statements of 3 of the 6 events in which she alleges I assaulted her. Each of those events she is proven a liar in spectacular fashion. What form of logical structure can be used that supports her claims when there were no video cameras? One would have to admit that she is a proven liar over and over, but then give her the benefit of the doubt that when there are no cameras present, she is finally telling the truth. Was she so unlucky to have made false allegations only when there were cameras and was in fact sexually assaulted when there were none? En arguendo, let's say that is the case.

So then giving her an irrational deference that she is that unlucky, there is still the question of why would she go from location to location with someone that she claims is sexually assaulting her, over and over? She is talking about how she is trying to get help from others, that they are supposedly telling her to get away from me (Casey's Allegaions), and telling me to get away from her(Bottoms Up Allegations), so why on earth is she continuing with an attacker from location to location, when so many people are around her that are allegedly trying to defend her? When she claims she is in distress, getting help from specific persons, those persons say no, she is only out of control drunk. Her allegations are just as out of control.

In defense of Polak, while in the interview with Luczak, she was reacting to his leading questions. If you watch the exact moment in which "she alleges" I digitally entered her vagina, that allegation is not an original allegation of her own, but one that is created by Luczak, that she accepts and takes possession of. While I do feel bad for her that she was led on by Officer Luczak, she did take on that responsibility of affirming his leading question.

Officer Luczak had a duty to report facts, not create his own preferred ones. He knowingly led Polak to make an allegation that up to that moment had never been made. He did so with ample evidence that Polak was a disgruntled individual that was making verifiably false allegations. The totality of the circumstances demonstrate that Luczak had a deliberate indifference to the rights of this Plaintiff.

And let's be reasonable and just assess this from a rational viewpoint. Polak's allegations are inclusive of in public events in which those allegations mostly are proven to be fabricated (there is no footage of Sugar Maple), and at the Sugar Maple the owner said is impossible to have happened what she alleged since he was standing within 5 to 10 feet of us at all times with no music playing. Then the other allegations are that I sexually assaulted her in my car. But its not that I was supposedly sexually assaulting her in my car as we were parked, she alleges that I was driving as I was forcing myself on her. Now, one would ponder, why on earth does an attacker, that is in control of the vehicle, not just stop the car and attack the victim? Well, that is what a real attacker would do. But she never alleges that I attacked her as the car was parked. She doesn't allege this because I never attacked her. Her allegations are an emotional rant of a profusely drunk and mentally ill individual that needs serious professional help. Those that gave her deference hurt her more than helped, violated their oaths, disgraced their uniforms and violated my Rights.

On its face, the allegations that are not able to be proven one way or another are akward and unusual. The final allegation is that as I was driving a sports car with bucket seats, with the Defendant wearing what appear in the video to be tight jeans and the Defendant appearing to be obese in figure, I somehow managed to get my hand in her pants against her wishes, as I drove and then succeeded in penetrating her vagina, as she was in a bucket car seat. Is this even plausible?

And if I did digitally penetrate her, wouldn't that be the first allegation she makes? She however never made that allegation, but only affirmed a leading question by Officer Luczak about an hour later, after she made it clear she was mad at me for ignoring her. Officer Luczak is the reason why I was accused of felony sexual assault, not Robin Polak or any factual event. Officer Luczak fabricated the crime.

The aforementioned, demonstrable and verifiable facts that were known to the officers at the time of arrest are overwhelming as to the proven beyond any doubt lack of credibility of the accuser. That lack of credibility can not be understated. Its overwhelming presence makes my arrest a willful disregard for my liberty.

Then if we add on that the felony accusation was a creation of the Defendant, Officer Luczak, and not the Accuser, and that the Defendants committed perjury by swearing under oath to an assault at the Tap Room which they knew to be false, collectively demonstrates animus by the officers. They took clear and specific action to falsify facts and evidence in contradiction to the rights of the Plaintiff.

IV.    CONCLUSION

The only basis for coming to the conclusion that Polak was a sexual assault victim would be based on gender discrimination. If a woman is always telling the truth, then she is in fact a victim of sexual assault. If, however we assess veracity by demonstrable facts, then Polak is by her own words spoken, and video evidence of the actual events, and statements of the witnesses she alleged were trying to "save [her]", *proven* to be a liar.

The Defendants decision to arrest was based on mere suspicion alone due to the lack of evidence of guilt and overwhelming evidence of innocence coupled with the overwhelming lack of credibility of the accuser.

In short, the Defendants ignored plain evidence known to them, willfully disregarded my right to not be discriminated against due to my gender, and created a felony complaint in order to support the disproven misdemeanor assaults that Polak was a known liar regarding.

If a juror were to make a decision based on gender discrimination, the Court would be compelled to provide a judgment not withstanding in favor of the Plaintiff as the verdict would be inherently unconstitutional.

I have suffered serious emotional harm. I was incarcerated for 2.5 days that resulted in a no process. I have lost the ability to practice Jiu Jitsu with the same people that I had over the previous 8 years, (because many of them are South Milwaukee Police Officers). I have suffered difficulties in personal relationships, always paranoid now that if I am not constantly recording my interactions with others that I will be accused of rape - if I do not have clear proof I am not raping someone then it seems according to the SMPD that I will be.

My ability to date women has been seriously affected by the accusations of sexual assault. My interactions with women have been seriously affected as I am always paranoid now

that any woman I speak to might end up not liking me and be used as a pawn by others to attack me. The affects of what has been done to me are real.

The nature of my personal acquaintance with 4 officers of the SMPD, them being fellow jui jitsu practitioners for as long as 8 years, makes the impact on my loss of reputation and humiliation aggravated. The Jiu Jitsu community is a very tight knit community, so my not being allowed to practice with those officers, has pretty much banned me from the sport locally.

Rape is evil. It tears at the heart and soul of the victim. A false accusation of rape does no less. The acts of the Defendants were evil. While Polak in name is listed as the accuser, the facts make it clear by the words of the Defendants, that the felony assault accusation was a created by the Defendants. The facts demand justice.

**WHEREFORE**,

Plaintiff Moves Court to find in favor of Plaintiff for the amounts specified within the Complaint.

1. Find that Defendant did by the preponderance of the evidence, did falsely allege that the Plaintiff sexually assaulted Polak at the Tap Room Bar

2. Find that the Defendants did by the preponderance of the evidence, falsely allege that the Plaintiff sexually assaulted the Defendant at Casey's Bar.

3. Find that the Defendants did by the preponderance of the evidence, falsely arrest the Plaintiff for felony sexual assault.

4. Find that the Defendant did by the preponderance of the evidence, act with willful disregard for the rights of the Plaintiff

5. Find that the false allegations made by the Defendant are slander per se.

6. Find that the Defendant is liable for punitive damages as Complained by Plaintiff.

7. Find that the Defendant is liable for presumed damages as Complained by Plaintiff.

8. Find that the Defendant is liable for any other damages the Court finds equitable

Executed this 20th day of October, 2022

/s/ Christian Pressley
Plaintiff Pro Se
103 South Mill Street
Saukville, WI. 53080

# EVIDENCE LIST

ALL EVIDENCE IS ON USB FLASH DRIVE with the exception of Depositions that have been filed with the Court.

For best results on some video footage, please use "smart player" application that is included in the Evidence USB. This will allow you to speed up footage and move from one time frame to another. For some videos, if you open them with certain video players, will not allow you to speed up or jump to future frames.

1. Rodman Body Cam 2 – Located under same name in flash drive
2. Rodman Body Cam 3 – Located in Flash Drive under same name
3. Rodman Body Cam 4 – Located in Flash Drive under same name
4. Luczak Body Cam 1 – USB Flash Drive
5. Luczak Body Cam 2
6. Luczak Body Cam 3
7. Luczak Body Cam 4
8. Luczak Body Cam 5
9. Luczak Body Cam 6
10. Tap Room Cam 4 File 1 – First part of camera 4
11. Tap Room Cam 4 File 2 – Second part of camera 4
12. Tap Room Cam 4 File 3 – Third part of camera 4
13. Tap Room Cam 11 File 1 – First part of camera 11
14. Tap Room Cam 11 File 2 – Second part of camera 11
15. Tap Room Cam 11 File 3 – Third part of camera 11
16. Bottoms Up Footage
17. Open Records Request – Police Reports
18. Open Records Request – Police Dispatch Records
19. CR-215 Probable Cause Determination Document

20. Casey's Footage File 1
21. Casey's Footage File 2