UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTIAN D. PRESSLEY,

                Plaintiff,

                                    Case No. 21-cv-148-pp

    v.

CITY OF SOUTH MILWAUKEE,
and JASON WALKER,

                Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DKT. NO. 60), DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 64) AND DISMISSING CASE**

---

On January 19, 2021,[1] the plaintiff—who is representing himself—filed

in Milwaukee County Circuit Court a document titled "Intentional Tort

Complaint and Discovery Demand," alleging that the South Milwaukee Police

Department had investigated and arrested him based on false sexual assault

allegations made by Robyn Polak.[2] Dkt. No. 1-2. The complaint alleged that the

plaintiff had spent two and a half days in the Milwaukee County Jail even

---

[1] The complaint attached to the defendants' notice of removal does not bear a
state court file stamp. Dkt. No. 1-2. The notice of removal says that the
defendants were removing Milwaukee County Circuit Court Case No.
21CV000359, which was commenced on January 19, 2021. Dkt. No. 1 at 1.
The Wisconsin Circuit Court Access Program shows that the complaint in
Christian Pressley v. City of South Milwaukee, <u>et al.</u>, Case No. 2021CV000359
(Milwaukee County Circuit Court) was filed on January 19, 2021 and was
removed to federal court on February 15, 2021. https://wcca.wicourts.gov/.

[2] The plaintiff spells this person's surname "Polak;" defendant Walker spells it
"Polack."

though the district attorney allegedly had notified the City of South Milwaukee that he would not pursue the charges. Id. at ¶27. The complaint alleged that after the plaintiff was released and had filed a criminal complaint against Polak, the City of South Milwaukee and individual defendant Jason Walker had threatened to arrest the plaintiff if he "were to inquire by phone the status of his criminal complaint that he filed in person against Robyn Polak for having made the false allegations of sexual assault." Id. at ¶28.

On February 8, 2021, the defendants removed the case to this federal court. Dkt. No. 1. They answered the complaint that same day, dkt. no. 4; this court did not screen the complaint.

On October 21, 2022, after extensive motion practice during the discovery phase (see the court's order at Dkt. No. 58, recounting that litigation and resolving motions), the plaintiff and the defendants filed cross-motions for summary judgment. Dkt. Nos. 60, 64. The defendants filed a response to the plaintiff's motion for summary judgement and a reply brief supporting their own motion for summary judgment, dkt. nos. 68, 69; the plaintiff did not file opposition materials in response to the defendants' motion or a reply in support of his own motion.

The court will grant the defendants' motion for summary judgment, deny the plaintiff's motion for summary judgment and dismiss the case with prejudice.

## I. The Allegations in the Complaint (Dkt. No. 1-2)

In the introduction to the complaint, the plaintiff asserted that he was alleging "slander, defamation, libel, false imprisonment, obstruction, false arrest and civil rights violations in contradiction to the United States Constitutional Amendments 4 and 14 and in violation of 42 USC 1983 and discrimination based on gender." Dkt. No. 1-2 at 1, §I. The complaint did not assert any bases for federal jurisdiction (understandably, because the plaintiff filed the complaint in *state* court—it was the defendants who removed it to federal court). The plaintiff alleged that he was a resident of Grafton and that defendant Walker was a South Milwaukee Police Department supervisor at the time of the events in question. Id. at 1, §3.

The complaint alleged that on January 10, 2020, Robyn Polak falsely alleged that the plaintiff had sexually assaulted her "or engaged in unwanted sex acts" on several occasions during a four-hour period at multiple locations in Milwaukee County. Id. at ¶7. It asserted that the same day, Polak filed a police report containing those false allegations, and that she made false reports to both the South Milwaukee Police Department and the Milwaukee County District Attorney's Office. Id. at ¶¶8-9. The complaint asserted that the South Milwaukee Police Department had recovered video evidence from at least one location, and that that video evidence demonstrated that Polak's allegations were false. Id. at ¶10. The complaint alleged that Polak had obstructed justice by making the false allegations. Id. at ¶11. It asserted that the South Milwaukee Police Department had acted in bad faith by failing to obtain and

preserve exculpatory evidence, such as proof on Polak's phone that she'd sent the plaintiff sexually graphic photos. Id. at ¶¶12-13. Allegedly, the police department found no evidence to corroborate any of Polak's claims and there were no corroborating witnesses. Id. at ¶¶14-15, 20, 30. The complaint alleged that the police department discovered evidence that Polak had voluntarily gone with the plaintiff from location to location and that she was freely engaging in affectionate behavior with the plaintiff during the evening, which the video showed. Id. at ¶¶16-19. The complaint alleged that there were actions the police department could have taken—demanding Polak's cell phone, seeking phone records for both Polak and the plaintiff—that it did not. Id. at ¶¶22-23.

The complaint alleged that five days later, on January 15, 2020, the plaintiff was arrested based on Polak's false allegations and locked up in the Milwaukee County Jail; the booking records listed sexual assault as "part" of the basis for arrest. Id. at ¶24. The plaintiff was detained for 2.5 days due to the false allegations. Id. at ¶25. The district attorney's office allegedly told the City of South Milwaukee—before the plaintiff was arrested—that it would not pursue charges. Id. at ¶27. The complaint alleges that the City of South Milwaukee and Jason Walker threatened to arrest the plaintiff if he "were to inquire by phone the status of his criminal complaint that he filed in person against Robyn Polak for having made the false allegations of sexual assault." Id. at ¶28. The complaint asserted Walker told the plaintiff that the reason Walker had threatened to arrest the plaintiff for calling was because the

4

plaintiff had filed a civil lawsuit against the City of South Milwaukee. Id. at ¶29.

The complaint raised multiple claims: (1) violation of the Fourteenth Amendment Equal Protection Clause and 42 U.S.C. §1983 by the City of South Milwaukee for failure to arrest Polak for criminal obstruction, (2) violation of the Fourteenth Amendment Equal Protection Clause and 42 U.S.C. §1983 by the City of South Milwaukee for failing to arrest Polak for obstruction of justice when she allegedly made false claims of sexual assault, (3) violation of the Fourteenth Amendment Equal Protection and Due Process clauses and 42 U.S.C. §1983 by the City of South Milwaukee for failure to collect and preserve the plaintiff's cell phone for evidence that Polak obstructed justice to concealing that she had sent sexual images to the plaintiff, (4) violation of the Fourteenth Amendment Equal Protection Clause and 42 U.S.C. §1983 by the City of South Milwaukee for failure to collect Polak's cell phone for evidence that she had sent the plaintiff sexually graphic images, (5) violation of the Fourteenth Amendment Due Process and Equal Protection clauses and 42 U.S.C. §1983 by the City of South Milwaukee for failure to obtain phone records that allegedly would have shown who was telling the truth, (6) violation of the Fourth Amendment prohibition against unreasonable searches and seizures by the City of South Milwaukee for falsely arresting the plaintiff without any corroboration of Polak's claims, arresting the plaintiff even after discovering evidence that Polak was "giving and receiving affectionate contact freely" with the plaintiff the night of the incident, arresting the plaintiff despite learning

5

that Polak had voluntarily traveled freely with the plaintiff to different locations on the night of the incident and arresting the plaintiff despite learning that Polak was a liar about key elements of her allegations, (7) violation of the Fourth Amendment's prohibition against unreasonable searches and seizures by the City of South Milwaukee for falsely imprisoning the plaintiff for two and a half days due to Polak's false allegations and the false arrest, (8) violation of the Fourth Amendment's prohibition on unreasonable seizures by the City of South Milwaukee by arresting the plaintiff based on Polak's false allegations of sexual assault, (9) violation of the Fourteenth Amendment Equal Protection Clause (and the plaintiff's "Right to Equal Access") by the City of South Milwaukee and Jason Walker for threatening to arrest the plaintiff if he were to inquire by phone about the status of the criminal complaint he'd filed against Polak (retaliation), (10) violation of the Fourteen Amendment's Equal Protection Clause by the City of South Milwaukee for telling the plaintiff that the reason for threatening his arrest if he were to call and inquire about the criminal case was a civil suit the plaintiff had filed against the City of South Milwaukee (retaliation), (11) violation of the Fourteenth Amendment Equal Protection Clause (and "Equal Access to Government Services") by the City of South Milwaukee for ignoring and failing to record the criminal complaint the plaintiff filed against Polak, (12) violation of the Fourth Amendment's prohibition against unreasonable seizures by the City of South Milwaukee for arresting the plaintiff without probable cause, as demonstrated by the accumulation of falsehoods told by Polak and the lack of corroborating evidence and (13)

6

"gender discrimination" by the City of South Milwaukee, Jason Walker and "others to be named," because all the actions they took to violate the plaintiff's rights were based on gender discrimination. Id. at pages 4-7, ¶¶a-p.

The plaintiff sought declaratory judgment, compensatory, "general" and punitive damages. Id. at §VI (pages 7-8).

## II. Motions for Summary Judgment (Dkt. Nos. 60, 64)

### A. Jurisdiction

As the court has observed, the complaint the plaintiff filed in state court does not state a basis for federal jurisdiction. As the court will explain below, all but one of the plaintiff's claims allege violations of federal constitutional provisions (either the Fourth or the Fourteenth Amendments), and many of them allege a violation of 42 U.S.C. §1983, a federal civil rights statute. That means the court has federal question jurisdiction under 28 U.S.C. §1331. Arguably, the plaintiff's last claim of "gender discrimination" could constitute an alleged violation of the Fourteenth Amendment's Equal Protection Clause, but even if the plaintiff intended to allege a state-law claim of gender discrimination, the court could exercise supplemental jurisdiction over that claim under 28 U.S.C. §1367(a), because the claims "are so related to claims in the action with . . . original jurisdiction that they form part of the same case or controversy under Article III of the United States." The court concludes that it has subject-matter jurisdiction to decide the motions for summary judgment.

B.   Legal Standard Governing Summary Judgment

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in that party's favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The Seventh Circuit has said that summary judgment is the proverbial "put up or shut up" moment in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).

To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Anderson, 477 U.S. at 255). "However, favor

8

toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)); see also Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (internal quotations and citations omitted)). "[T]o survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

C.   Local Rules Governing Summary Judgment

Civil Local Rule 56(b)(1) (E.D. Wis.) requires a party moving for summary judgment to file:

(A) a memorandum of law;

(B) a statement setting forth any material facts to which all parties have stipulated;

(C) a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law;

    (i) the statement shall consist of short numbered paragraphs, each containing a single material fact, including within each paragraph specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the fact described in that paragraph;

9

(ii) a moving party may not file more than 150 separately numbered statements of fact;

(iii) *failure to submit such a statement constitutes grounds for denial of the motion*; and

(D) any affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

Civil L.R. 56(b)(1) (emphasis added).

Civil L.R. 56(b)(2) explains that within thirty days of service of a summary judgment motion, a party opposing that motion must file:

(A) a memorandum of law;

(B) a concise response to the moving party's statement of facts that must contain:

(i) *a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph,* including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and

(ii) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph. A non-moving party may not file more than 100 separately-numbered statements of additional facts. Each separately-numbered paragraph shall be limited to one material fact; and

(C) any opposing affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

Civil L.R. 56(b)(2) (emphasis added). "The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." Civil L.R. 56(b)(4).

10

If a party is representing himself and the opposing party files a motion for summary judgment, counsel for the moving party must comply with the following procedure:

> (A) The motion must include a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion.

> (B) In addition to the statement required by Civil L. R. 56(a)(1)(A), the text to Fed. R. Civ. P. 56 (c),(d), and (e), Civil L. R. 56(a), Civil L. R. 56(b), and Civil L. R. 7 must be part of the motion.

Civil L.R. 56(a)(1).

### D. Self-Represented Litigants

Although "courts are required to give liberal construction to *pro se* pleadings," "it is also well established that *pro se* litigants are not excused from compliance with procedural rules." Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008). The Seventh Circuit has explained that "a court has discretion to enforce its local rules, even against a *pro se* litigant." Turner v. Cox, 569 F. App'x 463, 467 (7th Cir. 2014) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). A court acts within its discretion when it "conclude[s] that [a self-represented plaintiff's] filings failed to comply with local rules and as a consequence essentially accept[s] the defendants' proposed facts as true." Id. The Seventh Circuit has "repeatedly held that district judges may strictly enforce local summary-judgment rules," even against self-represented parties. McCurry v. Kenco Logistics Servs., LLC, 942 F.3d 783, 787 (7th Cir. 2019).

11

"Though the Court is required to liberally construe a [self-represented] plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him." Adames v. Bikowski, Case No. 16-CV-1010, 2017 WL 4564792, at *2 (E.D. Wis. Oct. 11, 2017). It is "the plaintiffs' responsibility to point [the court] to any evidence that . . . support[s] [the] essential element[s] of their claim." Johnson v. Advoc. Health & Hosps. Corp., 892 F.3d 887, 898 (7th Cir. 2018). The Seventh Court has stated more than once that "'[the court] will not root through the hundreds of documents and thousands of pages that make up the record here to make [a plaintiff's] case for him.'" Rahn v. Bd. of Trustees of N. Ill. Univ., 803 F.3d 285, 294 (7th Cir. 2015) (quoting Corley v. Rosewood Care Ctr., Inc. of Peoria, 388 F.3d 990, 1001 (7th Cir. 2004)); see also D.Z. v. Buell, 796 F.3d 749, 756 (7th Cir. 2015) (stating that courts are not required to "scour the record looking for factual disputes" or "piece together appropriate arguments").

E.    Procedural Background

On August 23, 2022, the court issued a sixty-seven-page order ruling on several motions and attempting to untangle the procedural snarl created by its delay in ruling and by the number of motions, responses and replies that the parties had filed. Dkt. No. 58. In a preface to its substantive rulings, the court wrote the following:

> The plaintiff is no stranger to litigation. He filed three complaints in this district in less than a year, two naming the City of South Milwaukee as a defendant. Pressley v. City of South Milwaukee, Case No. 20-cv-1048; Pressley v. Ozaukee County, Case No. 20-cv-1404; Pressley v. City of South Milwaukee, Case No. 21-cv-148. He has filed cases in state courts, suing several individuals

12

and municipalities. See, *e.g.* Pressley v. City of South Milwaukee, *et al.*, Case No. 2021CV000359 (Milwaukee County); Pressley v. City of South Milwaukee, Case No. 2020CV005309 (Milwaukee County); Pressley v. City of South Milwaukee Police Dept., Case No. 2020CV001332 (Milwaukee County); Pressley v. City of Milwaukee, 2019CV001027 (Milwaukee County); Pressley v. Grafton Police Dept., Case No. 2016CV000234 (Ozaukee County). https://www.wicourts.gov.

Although the plaintiff states repeatedly in his filings that he is proceeding *pro se*, he also has told the court that he has studied legal ethics, dkt. no. 53 at 3; that he has a "bachelors level education in the law," dkt. no. 40 at 17; that "[e]very case law that [he has] read . . . has involved simple concepts," dkt. no. 53 at 3; that he had "not yet taken Civil Procedure in undergrad when [he] filed this case" (implying that he has taken it since), dkt. no. 56 at 2; that when he "created the Compliant [he] did not have any education on Monel[3] and no understanding of how facts needed to be plead. I do now . . . ," dkt. no. 34 at 4; and that the defense has discovered that he "was not new to depositions completely," dkt. no. 42 at 7.

> [3]The court assumes the plaintiff is referring to Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978).

The plaintiff admits that he knows that there are federal and local rules that govern civil litigation. Dkt. No. 56 at 2 ("I do understand that there are Local and Federal Rules. I had not yet taken Civil Procedure in undergrad when I filed this case. That being said, I am pro se and justice should prevail."). The Seventh Circuit repeatedly has held that even *pro se* litigants must follow procedural rules. Collins v. Illinois, 554 F.3d 693, 697 (7th Cir. 2009).

\* \* \* \*

The plaintiff has stated repeatedly that he is educated in the law, yet he has filed motions that do not comply with the federal and local rules, then asserted that he was not aware of the requirements imposed by those rules. He has failed to file reply briefs, then argued that he did not know that he was supposed to. His arguments and support for the motions he has filed continue to trickle in months after the motions are fully briefed, forcing the defendants and the court to go searching through hundreds of pages of documents to find items he cited weeks or months before filing them and delaying the court's ability to determine the contours of his claims. His motions contain incorrect record citations. He has twice sought

leave to amend with different proposed amended complaints, and he filed both motions after the defendants had filed their motion for summary judgment on the original complaint. He failed to respond to the defendants' proposed findings of fact in support of their motion for summary judgment. He files motions, responses and replies that either lack any citation to authority or that go on for pages and pages. He frequently uses motions, responses and replies to argue the meris of the lawsuit, which it is appropriate for the court to address only at summary judgment. His tone is often sarcastic, unprofessional and combative; he attacks not only the defendants but their lawyers in both email communications and motions.

Id. at 7-10.

After conceding that the court, too, bore responsibility for the procedural tangle of the case, id. at 10-11, the court denied without prejudice the defendants' first motion for summary judgment. Id. at 67. In a later order, it set a deadline of October 21, 2022 for parties to file motions for summary judgment, a deadline of November 21, 2022 for opposition materials and a deadline of December 9, 2022 for replies. Dkt. No. 59.

On October 21, 2022, the defendants filed their second motion for summary judgment, which, like their first motion, complied with the court's Civil Local Rules. Dkt. No. 60. Along with the motion, the defendants filed a memorandum of law, dkt. no. 61, proposed findings of fact, dkt. no. 62, and a declaration from defendant Walker, dkt. no. 63. Because the plaintiff is representing himself, the defendants attached a copy of Civil Local Rule 56 as required by Civil Local Rule 56(a)(1). Dkt. Nos. 60, 60-1. The defendants' motion contained the following statement: "Defendants hereby place Plaintiff on notice that any factual assertions contained in the Declarations accompanying this Motion will be accepted by the Court as being true unless the Plaintiff

14

shows his own Declaration(s) or other documentary evidence contradicting those factual assertions." Dkt. No. 60 at 1-2.

Although the court set a deadline of November 21, 2022 for filing opposition materials, the plaintiff did not file a brief in opposition to the defendants' motion, or any other opposition materials.

After the deadline had passed for the plaintiff to file his opposition materials, the defendants filed a reply brief in support of their motion. Dkt. No. 69. They pointed out that the plaintiff had not filed opposition materials and argued that as a result, their proposed findings of fact were undisputed and that they were entitled to summary judgment. Id. at 1.

The same day that the defendants filed their summary judgment motion, the plaintiff filed his motion for summary judgement. Dkt. No. 64. Although the plaintiff filed a combined summary judgment motion and memorandum of law, dkt. no. 65, an "affidavit in support of evidence," dkt. no. 65, and exhibits (contained on a flash drive), dkt. no. 66, he did not file "a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." See Civil L.R. 56(b)(1)(C). The combined motion/memorandum of law stated that "given the significant number of allegations and the video that is available regarding those events," the plaintiff had "included a table that lists key specific allegations/moments that can be analyzed by the Court which are plain evidence in contradiction to Polak's specific allegations." Dkt. No. 64 at 7. The plaintiff asked the court to "PLEASE VIEW THE VIDEOS AND READ THE

15

EVIDENCE DOCUMENTS TO VERIFY WHAT IS CLAIMED WITHIN THESE TABLES." Id.

The flash drive that the plaintiff submitted is Dkt. No. 66. In an unverified "declaration," the plaintiff stated that the drive contains police reports, bar surveillance footage, video of the plaintiff's arrest interview and a probable cause determination. Dkt. No. 65. One cannot access these materials from the docket; the clerk's office maintains the flash drive. The drive includes hours of video footage. The defendants state in their brief in opposition to the plaintiff's motion for summary judgment that the plaintiff "failed to provide his filed exhibits (Dkt. No. 66) to Defense Counsel even after repeated requests to do so." Dkt. No. 68 at 5 n.1.

A month after the plaintiff filed his motion for summary judgment, the defendants filed their opposition materials. Dkt. No. 68. The plaintiff did not file a reply brief in support of his motion.

F.     Facts

As the court has explained, only the defendants have filed proposed findings of material fact. The plaintiff did not file a response to those facts or file his own.[3] As Civil L.R. 56(b)(4) says, "The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding

---

[3] Civil L.R. 56(b)(9), titled "Sanction for Noncompliance," says that "[f]ailure to comply with the requirements of this rule may result in sanctions up to and including the Court denying or granting the motion." The court has the authority to deny the plaintiff's motion and grant the defendants' motion without analysis, as a sanction for the plaintiff's failure to comply with Civil L.R. 56. It has not done so; it has analyzed the plaintiff's substantive claims.

16

summary judgment." So the court must deem the defendants' proposed findings of material fact admitted. The plaintiff's complaint is not sworn under penalty of perjury or verified under 28 U.S.C. §1746. Dkt. No. 1-2. That means the court cannot rely on the facts alleged in the complaint as if they had been made in a sworn affidavit. See Ford v. Wilson, 90 F.3d 245, 247 (7th Cir. 1996) (holding that if a complaint is verified under 28 U.S.C. §1746, "those parts of the complaint that satisfy[y] the requirements [for an affidavit are] affidavit material."). The plaintiff's combined motion for summary judgment and memorandum of law is not sworn under penalty of perjury or verified, dkt. no. 64, so the court cannot rely on any factual allegations in that document as if they were made in an affidavit. The plaintiff's "affidavit" in support of evidence is not sworn under penalty of perjury or verified, and in any event does not assert any facts related to events that give rise to the plaintiff's claims. Dkt. No. 65. Because the plaintiff has not complied with the federal or local rules in providing the court with verified facts he believes are material to his claims, in ruling on the summary judgment motions, the court must rely on the facts from the defendants' proposed findings of fact and accompanying affidavits.

Defendant Jason Walker is a lieutenant with the City of South Milwaukee Police Department. DKt. No. 62 at ¶2. On Friday, February 21, 2020, Walker was notified (the defendants do not say by whom) that the previous day—February 20, 2020—the plaintiff had called the South Milwaukee Police Department over sixty times. Id. at ¶6; Dkt. No. 63 at ¶2 (verified declaration of Jason Walker). Walker was advised—again, the defendants do not say by

whom—that the Ozaukee County Sheriff's Office had sent a deputy to the plaintiff's residence on February 20, 2020 to tell him to stop calling the South Milwaukee Police Department. Dkt. No. 62 at ¶7; Dkt. No. 63 at ¶2.

On Friday, February 28, 2020, the plaintiff called the South Milwaukee Police Department again. Dkt. No. 62 at ¶8; Dkt. No. 63 at ¶3. Walker answered that call shortly after 3:30 in the afternoon, advised the plaintiff to stop calling the police department and told the plaintiff "that the lawsuit he was bringing against the South Milwaukee Police Department would be the channel for him to potentially receive the satisfaction he desired." Dkt. No. 62 at ¶9; Dkt. No. 63 at ¶3 (both citing <u>Pressley v. City of South Milwaukee Police Department</u>, Case No. 2020CV001332 (Milwaukee County Circuit Court)). Walker eventually hung up on the plaintiff because, according to Walker, the plaintiff wasn't listening to him. Dkt. No. 62 at ¶9; Dkt. No. 63 at ¶4.

The South Milwaukee Police Department generally has only one dispatcher working during the hours that the plaintiff was calling. Dkt. No. 62 at ¶11; Dkt. No. 63 at ¶5. That dispatcher has a number of responsibilities: "answering all external phone calls that come into the Police Department, including 911 calls, speaking to citizens who come in to the lobby after normal business hours to report incidents, creating calls in the CAD [Computer Aided Dispatch] system and updating them as officers address the calls, responding to officer's requests for information, creating and updating all calls for fire and EMS services, listening to multiple radio channels used by surrounding agencies, and of course dispatching officers, fire and EMS personnel." Dkt. No.

18

62 at ¶12; Dkt. No. 63 at ¶5. That list does not cover all the dispatcher's duties. Dkt. No. 62 at ¶13; Dkt. No. 63 at ¶5. When one person continuously calls the Police Department—sixty-five times in about a two-hour period, as Walker avers that the plaintiff had done—it takes the dispatcher's focus from his or her duties. Dkt. No. 62 at ¶14; Dkt. No. 63 at ¶6. The defendants assert that the distraction is magnified "when the person calling is loud, rude, vulgar, belligerent, harassing, and threatening to the dispatcher, as [the plaintiff] reportedly had been at that time." Dkt. No. 62 at ¶15; Dkt. No. 63 at ¶6. It distracts the dispatcher from what they need to hear, communicate, and respond to, which can have severe detrimental impacts on the safety of the City of South Milwaukee's citizens, officers, and fire and EMS personnel. DKt. No. 62 at ¶16; Dkt. No. 62 at ¶6.

At 4:03 p.m. on Sunday, March 1, 2020, Walker received an email from the plaintiff. Dkt. No. 62 at ¶17; Dkt. No. 63 at ¶7. There was an attachment to the email: a PDF copy of a John Doe Petition that the plaintiff intended to file in Milwaukee County Circuit Court, with Walker listed as the defendant. Dkt. No. 62 at ¶18; Dkt. No. 63 at ¶7 (both citing In the Matter of John Doe, Case No. 2020JD000006 (Milwaukee County Circuit Court)). A week later, on Sunday, March 15, 2020, Walker received another email from the plaintiff with a ten-page Word document attached, "which continued to rehash [the plaintiff's] complaints against the South Milwaukee Police Department's investigation of Incident #20-000783, relating to the alleged sexual assault of Robyn A. Polcack by [the plaintiff] on January 10, 2020." Dkt. No. 62 at ¶19;

19

Dkt. No. 63 at ¶8. Walker avers that he did not respond to either of the plaintiff's emails and did not send a "Read Receipt" for either email (as the plaintiff had requested). Dkt. No. 62 at ¶20; Dkt. No. 63 at ¶9.

Walker avers that he never threatened to arrest the plaintiff if the plaintiff called about the status of the complaint the plaintiff said he filed in person. Dkt. No. 62 at ¶21; Dkt. No. 63 at ¶12. Walker avers that he never told the plaintiff that the reason for threatening to arrest him was because of the civil suit the plaintiff had filed against the City of Milwaukee.[4] Dkt. No. 62 at ¶22; Dkt. No. 63 at ¶12. Walker avers that none of his interactions with the plaintiff were based on gender. Dkt. No. 62 at ¶22; Dkt. No. 63 at ¶13. And Walker avers that to the best of his knowledge, he had no other interactions with the plaintiff. Dkt. No. 62 at ¶24; Dkt. No. 63 at ¶14.

G.    The Parties' Arguments

In their brief in support of their motion for summary judgment, the defendants argue that although the plaintiff has brought "a litany" of claims against the City of South Milwaukee, the Supreme Court has held that for a plaintiff to prove a civil rights violation under 42 U.S.C. §1983 against a municipality, the plaintiff must show that it was an official municipal policy, custom or practice that caused the constitutional violation. Dkt. No. 61 at 3 (citing Monell, 436 U.S. at 690-91). They argue that the plaintiff's claims "do not attribute his allegations to any municipal policy or custom." Id. Specifically, they say that "the City of South Milwaukee cannot know that Ms. Robyn Polak

_____

[4] The court suspects that the Walker meant the City of *South* Milwaukee.

is a known liar as alleged by Plaintiff," and that "[o]nly a person, an individual employee or employees of the City would be in that position." Id.

As to the plaintiff's claim that Walker threatened to arrest the plaintiff if he made any more phone calls, and made that threat in retaliation for the plaintiff having filed a lawsuit against the City of South Milwaukee, the defendants assert that Walker never made such a threat. Id. at 4. They assert that even if Walker had made such a threat, the plaintiff would not be able to show that he was denied equal protection or equal access; they point out that the plaintiff was able to make many, *many* phone calls to the police department before Walker allegedly made the threat, and that the plaintiff could have communicated with the police department via mail, email or in-person visits. Id.

The defendants argue that the court must dismiss the plaintiff's gender discrimination claim against Walker because the plaintiff has not alleged that anything Walker allegedly said or did was motivated by the plaintiff's gender. Id. at 5.

The defendants assert that Walker is entitled to qualified immunity. Id. at 5. They assert that the plaintiff has not demonstrated that Walker violated any clearly established right. Id. at 6.

Finally, the defendants observe that the plaintiff seeks punitive damages; they assert that he is not entitled to punitive damages because the record contains no evidence that Walker acted with evil motive or intent, or with callous indifference to the plaintiff's federally protected rights. Id. at 6-7.

21

In the plaintiff's combined motion for summary judgment and memorandum of law in support, he focuses entirely on his claims that Robyn Polak made false allegations against him with the intent to injure him, that the defendants were aware of that and that they disregarded that fact in arresting and detaining him. Dkt. No. 64. After listing the evidence he included on the flash drive of exhibits he provided, the plaintiff explained:

> January 9th 2020, Plaintiff drove to Polaks residence in South Milwaukee around 6pm, they then together went to 7 business establishments eating and drinking. The night ended with Polak getting out of the Plaintiffs car outside of Powers Bar, angry that the Plaintiff did not want to keep drinking and telling her he didn't like her (according to Plaintiff), and according to Polak ended with either her jumping out of the Plaintiffs car, tricking him to stop so she could get out, or one of the other versions she gave to law enforcement.

> In chronological order, the parties went from outside her residence to Café Central. Then walked to Sugar Maple Bar, then walked to Hi Hat Bar, then walked to Tonic Bar, then drove to Tap Room Bar, then walked to Caseys Bar, then drove to Bottoms Up, then drove to Powers Bar that was closed, then got in car when Polak then became enraged that Plaintiff both refused to go to another bar and told her he didn't like her.

Id. at 5.

"For the sanity of the Court," the plaintiff listed all Polak's allegations against him in chronological order, the location where Polak said the violation took place, the person to whom Polak made each allegation and the evidence that the plaintiff says the court should review that either refutes or would refute the allegation. Id. at 5-7. The plaintiff also listed each of Polak's allegations next to the correlating evidence that, again, the plaintiff asserts refutes or would refute Polak's claims. Id. at 7-12. As part of this comparison

22

chart, the plaintiff inserts his own explanations about what was going on at each location. Id.

The law the plaintiff cites relates to the probable cause standard. Id. at 13. The plaintiff concedes that an accusation from an alleged victim can constitute probable cause, but he nonetheless lists all the reasons he argues that Polak (the alleged victim) was not a credible accuser. Id. at 13-21. Most of this discussion focuses on Polak and the ways that the plaintiff alleges that she lied and proved herself to be unworthy of belief. But the plaintiff *does* allege that "[o]fficers" omitted and disregarded exculpatory evidence (such as statements from the bartender at Bottoms Up that Polak was being disruptive). Id. at 18-19. He alleges that Officer Lucazk "led" Polak to make certain allegations against the plaintiff. Id. at 20. The plaintiff asserts that "those who" deferred to Polak's version of events hurt her and violated his rights. Id. He alleges that Luczak "fabricated the crime." Id. at 21.

In the conclusion section of his motion/memorandum of law, the plaintiff asserts that "[t]he only basis for coming to the conclusion that Polak was a sexual assault victim would be based on gender discrimination." Id. at 22. He asserts that "[i]f a woman is always telling the truth, then she is in fact a victim of sexual assault," but argues that the facts prove Polak was a liar. Id. He maintains that the "defendants" decision to arrest him was "based on mere suspicion alone due to the lack of evidence of guilt and overwhelming evidence of innocence coupled with the overwhelming lack of credibility of the accuser," and he accuses the defendants of having ignored "plain evidence known to

23

them," willfully disregarding his right "not to be discriminated against due to [his] gender" and "creating" a felony complaint "to support the disproven misdemeanor assaults that Polak was a known liar regarding." Id. The plaintiff contends that "[i]f a juror were to make a decision based on gender discrimination, the Court would be compelled to provide a judgment not withstanding in favor of the Plaintiff as the verdict would be inherently unconstitutional." Id. The plaintiff explains the impact Polak's accusations have had on him:

> I have suffered serious emotional harm. I was incarcerated for 2.5 days that resulted in a no process. I have lost the ability to practice Jiu Jitsu with the same people that I had over the previous 8 years, (because many of them are South Milwaukee Police Officers). I have suffered difficulties in personal relationships, always paranoid now that if I am not constantly recording my interactions with others that I will be accused of rape – if I do not have clear proof I am not raping someone then it seems according to the SMPD that I will be.

> My ability to date women has been seriously affected by the accusations of sexual assault. My interactions with women have been seriously affected as I am always paranoid now that any women I speak to might end up not liking me and be used as a pawn by others to attack me. The affects of what has been done to me are real.

> The nature of my personal acquaintance with 4 officers of the SMPD, them being fellow jiu jitsu practitioners for as long as 8 years, makes the impact on my loss of reputation and humiliation aggravated. The Jiu Jitsu community is a very tight knit community, so my not being allowed to practice with those officers, has pretty much banned me from the sport locally.

Id. at 22-23.

The plaintiff concludes:

> Rape is evil. It tears at the heart and soul of the victim. A false accusation of rape does no less. The acts of the Defendants were

evil. While Polak in name is listed as the accuser, the facts make it clear by the words of the Defendants, that the felony assault accusation was a [sic] created by the [Defendants]. The facts demand justice.

Id. at 23.

The defendants filed a brief in opposition to the plaintiff's motion for summary judgment. Dkt. No. 68. They point out that the plaintiff's motion does not comply with Civil L.R. 56 because it does not include a statement of proposed material facts. Id. at 2. They argue that the plaintiff's brief "lacks adequate factual citation and is void [of] any legal citations to support his claims and arguments." Id. They contend that the plaintiff has not demonstrated that either defendant committed any constitutional violations, and that he has admitted as much. Id. They remind the court that this is not a criminal case and that the district attorney did not prosecute the plaintiff based on Polak's allegations. Id. at 2-3. They assert that the plaintiff has misrepresented both the evidence and the defendants' conduct. Id. at 5. The defendants contend that the plaintiff has provided no legal authority to support his claims that in relying on Polak's allegations and acting on them, the defendants violated the plaintiff's constitutional rights. Id. at 5-6. They reiterate that the plaintiff has not established Monell liability as to the City. Id. at 8-9. They reiterate that the plaintiff has not proven retaliation or gender discrimination by Walker. Id. at 10-11. And they reiterate their argument that Walker is entitled to qualified immunity. Id. at 11-12.

Although the plaintiff did not file materials in opposition to the defendants' motion for summary judgment, the defendants also filed a reply

25

brief in support of their motion. Dkt. No. 69. This pleading repeats the arguments from the defendants' own summary judgment brief and from their opposition brief to the plaintiff's summary judgment motion.

      H.    <u>Claims Against Defendant City of South Milwaukee</u>

           1.    *Municipal Liability for Constitutional Violations*

All but one of the claims in the complaint allege that the City of South Milwaukee violated the plaintiff's rights under either the Fourteenth or the Fourth Amendment. It is possible that the plaintiff's final claim—that the City discriminated against him based on his gender—also is meant to allege that the City violated the Equal Protection Clause of the Fourteenth Amendment. Section 1983 of Title 42 provides is the vehicle for a plaintiff to sue a "state actor" in federal court for violating his federal civil rights. The statute allows a plaintiff to sue a "person" who violates his civil rights while acting under color of state law. To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter Cnty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)).

The Supreme Court has held that a municipality is a "person" under §1983 and may be held liable for its own violations of the federal Constitution and laws. <u>Monell</u>, 436 U.S. at  690-91. But a municipality may not be held

vicariously liable for the constitutional torts of its employees or agents. J.K.J.
v. Polk County, 960 F.3d 367, 377 (7th Cir. 2020).

To prevail on a Monell claim for municipal liability, the plaintiff must
show that the alleged constitutional violations were the result of the "execution
of a government's policy or custom, whether made by its lawmakers or by those
whose edicts or acts may fairly be said to represent official policy." Monell, 436
U.S. at 694. The Seventh Circuit has recognized three types of municipal action
that can support municipal liability under §1983: "(1) an express policy that
causes a constitutional deprivation when enforced; (2) a widespread practice
that is so permanent and well-settled that it constitutes a custom or practice;
or (3) an allegation that the constitutional injury was caused by a person with
final policymaking authority." Spiegel v. McClintic, 916 F.3d 611, 617 (7th Cir.
2019) (quotation marks omitted).

A plaintiff bringing a Monell claim against a municipality "must show
that the policy or custom demonstrates municipal fault." Dean v. Wexford
Health Sources, Inc., 18 F.4th 214, 235 (7th Cir. 2021) (quotation marks
omitted). A plaintiff establishes municipal fault when he proves that the
municipality acted, or directed an employee to act, in a way that facially
violates a federal right. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404-05
(1997). On the other hand, where the plaintiff does not allege that the
municipality's action was facially unconstitutional and alleges only that the
municipality caused an employee to violate a federal right, a "rigorous
standard[ ] of culpability . . . applie[s] to ensure that the municipality is not

27

held liable solely for the actions of its employee." Id. at 405. The plaintiff must demonstrate that the municipality itself acted with "deliberate indifference" to his constitutional rights. Id. at 407. This showing requires the plaintiff to "prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago, 988 F.3d 978, 987 (7th Cir. 2021).

Finally, a plaintiff bringing a Monell claim must prove that the municipality's action was the "moving force" behind the violation of his constitutional rights. Brown, 520 U.S. at 404. This is a "rigorous causation standard" that requires the plaintiff to "show a 'direct causal link' between the challenged municipal action and the violation of his constitutional rights." LaPorta, 988 F.3d at 987 (quoting Brown, 520 U.S. at 404).

In their February 9, 2022 brief in opposition to the plaintiff's motion for leave to file a second amended complaint, the defendants discussed the requirements for Monell liability in some detail. Dkt. No. 54 at 10-11. The defendants filed that brief eight months before the plaintiff filed his motion for summary judgment. Yet nowhere in the plaintiff's twenty-five-page summary judgment motion/brief does the plaintiff mention Monell or discuss the requirements for proving a civil rights violation against a municipality. The first sentence of the plaintiff's combined motion/brief states, "Even though I lo[]se on technical grounds, justice has no knowledge of technicality." Dkt. No. 64 at 1. The requirements of Monell are not a "technicality." They are designed to

28

ensure that if a municipality has customs, policies or procedures that violate citizens' constitutional rights, those citizens can obtain redress. They also are designed to ensure that if a municipality's customs, policies or procedures did *not* cause a citizen's injuries, the municipality cannot be held liable. In such instances, the citizen must bring his claims against the individual state actors whom he believes violated his rights, not the municipality. More to the point, Monell is the law of the land. A United States District Court judge does not have the authority to ignore Supreme Court precedent.

The plaintiff has not proven a Monell claim. The complaint and the plaintiff's motion for summary judgment/memorandum of law argue that Polak fabricated the assault allegations against the plaintiff, and that South Milwaukee Police officers—some named, some not—acted in reliance on those fabricated allegations despite conflicting evidence. The plaintiff has not alleged, let alone proven undisputed, that the actions of the South Milwaukee Police officers resulted from an official "policy or custom" of City of South Milwaukee. Monell, 436 U.S. at 694. The plaintiff has not alleged that it was the practice or custom of the South Milwaukee Police Department to rely on false allegations made by purported victims while ignoring exculpatory evidence that favors the accused. He has not identified an express policy of the City mandating such conduct. He has not alleged that the constitutional violations were committed by people with final policy-making authority. Although the complaint makes allegations against Jason Walker, and the summary judgment motion/brief makes allegations that Lucazk "fabricated" a crime against the plaintiff, the

29

City of South Milwaukee cannot be held liable for the constitutional torts of its employees.

Because the plaintiff has not proven that the alleged violations of his constitutional rights were the result of a policy, custom or practice of the City of South Milwaukee, he has not proved municipal fault. Nor has he proved a causal link between any action by the City of Milwaukee and the constitutional injuries the plaintiff alleges.

The plaintiff has not proven that there is a genuine dispute as to the material factual issue of whether his alleged injuries were caused by a municipal policy, practice or custom and he has not proved that he is entitled to judgment as a matter of law. The court must deny the plaintiff's summary judgment motion and must grant summary judgment in favor of the City of Milwaukee on the plaintiff's claims against it.

### 2. *Alleged Constitutional Violations*

The court understands that the plaintiff views the <u>Monell</u> municipal liability issue as a "technicality," so it also has considered the plaintiff's allegations that the City violated the Constitution. The Fourteenth Amendment's Equal Protection Clause states that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." There are several "strains" of equal protection doctrine, as the Seventh Circuit pointed out in <u>McCauley v. City of Chicago</u>, 671 F.3d 611, 615 (7th Cir. 2011).

30

One strain is the "protected class" strain; "[t]he Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class . . . ." Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010). Protected classes include race and age, but the plaintiff has made no allegations about either his race or his age. He *has* alleged that the defendants discriminated against him based on his gender, and gender is a protected class. See, *e.g.*, Miss. Univ. for Women v. Hogan, 458 U.S. 718, 723 (1982) (policies that discriminate based on gender are subject to strict scrutiny under the Equal Protection Clause of the Fourteenth Amendment). "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Huebschen v. Dep't of Health and Soc. Servs., 716 F.2d 1167, 1171 (1983).

The plaintiff has alleged that he is male, and thus a member of a protected class. He has *alleged* that the police officers chose to believe Polak, despite evidence showing that she was not credible, because she was female, implying that they chose not to believe the plaintiff's version of events because he is male. But he has identified no evidence supporting this allegation. He appears to assume that, because the incidents in question involved a woman making allegations of sexual misconduct against a man, officers must have believed Polak because she was female and must have chosen not to believe the plaintiff because he is male. But "[c]onclusory allegations by the party opposing the motion [for summary judgment] cannot defeat the motion." Smith v.

Shawnee Library Sys., 60 F.3d 317, 320 (7th Cir. 1995) (citations omitted). The plaintiff's assumption is just that—an assumption. The officers may have found Polak credible because of her demeanor. They may have been giving her the benefit of the doubt until they could conduct further investigation. The plaintiff has presented no evidence that any officer *intentionally* discriminated against him *because* he is male. The plaintiff has not proven an equal protection gender discrimination against any individual officer, and thus could not have proven such an allegation against the City.

Another "strain" of equal protection jurisprudence is the so-called "class of one" equal protection doctrine, which requires a plaintiff to show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012) (quoting Engquist v. Or. Dept. of Agric., 553 U.S. 591, 601 (2008)). "Class-of-one claimants carry a heavy burden." FKFJ, Inc. v. Village of Worth, 11 F.4th 574, 588 (7th Cir. 2021). To support a class-of-one equal protection claim, a plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Geinosky, 675 F.3d at 747 (quoting Engquist, 553 U.S. at 602.

To satisfy the "similarly situated" element, a plaintiff must identify comparators that must be "prima facie identical in all relevant respects or directly comparable . . . in all material respects" to the plaintiff. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 799 (7th Cir. 2015) (quoting United

32

States v. Moore, 543 F.3d 891, 896 (7th Cir. 2008)). Whether entities are similarly situated is a factual question, but summary judgment is proper when no reasonable factfinder could find that the plaintiff has met the requirement. Id. at 799–80. As to the requirement that the plaintiff show that there was no rational basis for the different treatment, "a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification." Miller v. City of Monona, 784 F.3d 1113, 1121 (7th Cir. 2015) (quoting Scherr v. City of Chicago, 757 F.3d 593, 598 (7th Cir. 2014)). "The rational-basis requirement sets [a] legal bar low and simply requires 'a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" D.B. ex rel. Kurtis v. Kopp, 725 F.3d 681, 686 (7th Cir. 2013) (quoting Srail v. Village of Lisle, 588 F.3d 940, 946 (7th Cir. 2009)).

The plaintiff has not identified a "comparator"—a person who was similarly situated to him but whom the officers intentionally treated differently with no rational basis for doing so. He has not identified other men accused by women of sexual misconduct whom the officers chose to believe over their accusers. And an element of a "class of one" equal protection claim is that the alleged wrongful act "involves treatment departing from some norm or common practice." Id. (citation omitted). Law enforcement officers frequently must decide between competing versions of events, and they frequently must decide whether a person of one gender who alleges sexual misconduct against someone of a different gender is telling the truth or making things up.

33

Sometimes they get it wrong. Class-of-one claims are not designed to "turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits." Id.

The plaintiff has not produced evidence that he was denied equal protection under the law based on his gender.

The plaintiff also alleges that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment, which prohibits states from depriving any person of "life, liberty, or property, without due process of law." The plaintiff alleges that officers falsely arrested him based on Polak's allegations, even though they knew she was not truthful. But a false arrest claim arises under the *Fourth* Amendment, not the Fourteenth, and under state law. Braun v. Village of Palatine, 56 F.4th 542, 548 (7th Cir. 2022). To prove a false arrest claim under the Fourth Amendment, the plaintiff must prove that there was no probable cause for his arrest. Id. (quoting Neita v. City of Chicago, 830 F.3d 494, 497 (7th Cir. 2016)). The plaintiff alleged in his complaint, and has argued in his motion/brief, that there was no probable cause for his arrest. But even if that is true, the plaintiff has not identified *who* falsely arrested him. The complaint alleges only that "[o]n January 15th 2020 the Plaintiff was arrested due to the false allegations made by Defendant Polak . . . ." Dkt. No. 1-2 at ¶24. And as the plaintiff himself acknowledges, the probable cause standard is fairly low; "[p]robable cause 'is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal

34

conduct has occurred.'" Leaver v. Shortess, 844 F.3d 665, 669 (7th Cir. 2016) (quoting Whitlock v. Brown, 596 F.3d 406, 411 (7th Cir. 2010)). Even the plaintiff concedes that the officers had a complaint from a person who alleged that the plaintiff had sexually assaulted her.

The plaintiff insists that further, or better, investigation, and more careful consideration of the evidence that officers collected, would have shown that Polak was a liar. But "there is no 'constitutional right to have the police investigate [any] cause of action at all, still less to do so to [anyone's] level of satisfaction." Harer v. Casey, 962 F.3d 299, 306 (7th Cir. 2020) (quoting Rossi v. City of Chicago, 790 F.3d 729, 735 (7th Cir. 2015)). "[M]ere inactivity by police does not give rise to a constitutional claim." Id.

The plaintiff also alleges that he was falsely imprisoned because of Polak's allegations. Again, the complaint does not identify *who* falsely imprisoned the plaintiff. And, like a false arrest claim, probable cause "is an absolute bar to a claim of false imprisonment." Hawkins v. Mitchell, 756 F.3d 983, 994 (7th Cir. 2014) (quoting Poris v. Lake Holiday Prop. Owners Ass'n, 983 N.E.2d 993, 1007 (2013)). The plaintiff has asserted that there was no probable cause to arrest him, but has not provided evidence to support that assertion, and he concedes that Polak made allegations against him.

The plaintiff has referenced denial of government services, or denial of access to government services, in the complaint. There is no constitutional tort of denial of access to government services. This appears to be the plaintiff's characterization either of his gender discrimination claim (that he was denied

35

access to the police department due to his gender) or his retaliation claim against Walker.

The court will deny the plaintiff's motion for summary judgment as to the City of South Milwaukee, and will grant the City's motion for judgment in its favor.

I.    Claims Against Defendant Jason Walker

The complaint names Walker in two of the causes of action. It alleges "Malicious Retaliation with Intent to Cause Injury by way of Intentional Denial of Government Services" against the City and Walker, asserting that they "acted with malice and were deliberately indifferent of the Plaintiff's Constitutional Rights upon threatening arrest if the Plaintiff were to inquire by phone the status of his criminal complaint that he filed in person against Polak." Dkt. No. 1-2 at page 6, ¶l. (Oddly, the complaint does *not* mention Walker in the paragraph that alleges that the plaintiff was informed that the reason for threatening his arrest was the civil suit he'd filed against the city. Dkt. No. 1-2 at page 6, ¶m.) It also alleges that all the actions that were "contrary to the Rights of the Plaintiff that were committed by Defendants City of South Milwaukee, Jason Walker and others to be named, were based on gender discrimination." Id. at page 6, ¶p.

1.    *Retaliation*

The complaint asserts that the alleged retaliation violated the plaintiff's Fourteenth Amendment right to equal protection and his "Right to Equal Access." Dkt. 1-2 at 6, ¶l. The Equal Protection Clause "does not establish a

36

general right to be free from retaliation." <u>Grossbaum v. Indianapolis-Marion Cnty. Bldg. Authority</u>, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996) (citing <u>Ratliff v. DeKalb County, Ga.</u>, 62 F.3d 338, 341 (11th Cir. 1995)). The Seventh Circuit *has* held, however, that a plaintiff may sue for retaliation if the retaliation is based on a protected characteristic, such as sex. <u>Locke v. Haessig</u>, 788 F.3d 662, 672 (7th Cir. 2015).

As the court understands this claim, the plaintiff is alleging that Walker threatened to arrest him if he called the police station again and told the plaintiff that the reason he'd threatened to arrest him was because the plaintiff had filed a lawsuit against the city. The plaintiff has not proven, or raised a question of fact about whether, Walker threatened to arrest him in retaliation for his being *male*. The plaintiff has not proven that Walker retaliated against him because of his gender. The plaintiff has made only the conclusory allegation that whatever actions Walker took, he took based on the plaintiff's gender. That kind of conclusory allegation, as the court has stated elsewhere in this decision, is not sufficient to defeat summary judgment (or to obtain it).

The plaintiff's retaliation claim against Walker sounds more like a *First* Amendment retaliation claim than one under the Fourteenth Amendment.

> To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

<u>Holleman v. Zatecky</u>, 951 F.3d 873, 878 (7th Cir. 2020).

Case 2:21-cv-00148-PP   Filed 03/31/24   Page 37 of 41   Document 70

Indirectly, the plaintiff has alleged that he engaged in activity protected by the First Amendment—he says Walker told him that Walker was threatening to arrest him because the plaintiff had filed a lawsuit against the City of South Milwaukee. "The filing of a lawsuit can be an exercise of the First Amendment right of free speech if, as in 'cause' litigation, the suit articulates public concerns." Guth v. Tazewell County, 698 F.3d 580, 585 (7th Cir. 2012) (citations omitted). But the plaintiff has not proven this element because he has not described the basis for the lawsuit against the City, so the court cannot determine whether it articulated public concerns. The plaintiff has alleged that Walker took an adverse action against him—prohibiting the plaintiff from calling the police department by threatening him with arrest. The plaintiff has not proven this element for two reasons. First, Walker has submitted a verified declaration that he did *not* threaten the plaintiff with arrest, whether for retaliation or any other reason. The plaintiff has not presented any evidence of his own to create a genuine dispute as to that fact. Second, the plaintiff has not proven that Walker prohibited him from *communicating* with the police department—he has alleged only that Walker told him he'd be arrested if he kept *calling* the police department. Finally, the defendants have produced evidence refuting the third element—that the lawsuit the plaintiff filed against the City was a motivating factor in Walker's adverse action—and the plaintiff has produced no evidence to create a factual dispute.

38

As the court observed, the plaintiff also mentions his "Right to Equal Access." The court is not sure what the plaintiff means by this. There is no general constitutional right to access to government services. "The Constitution promises individuals the right to seek legal redress for wrongs reasonably based in law and fact." Harer, 962 F.3d at 306 (citations omitted). "A corollary of this right is the freedom from police interference with access to court, such that an officer's intentional concealment of 'the true facts about a crime may be actionable as a deprivation of constitutional rights under [42 U.S.C.] § 1983.'" Id. (quoting Rossi, 790 F.3d at 734). But the plaintiff has not alleged, or proven, that Walker denied him access to *court*. Nor has he alleged or proven that Walker intentionally concealed any true facts about a crime.

The court will deny the plaintiff's summary judgment motion against Walker on the retaliation claim, and grant Walker's motion for judgment in his favor on that claim.

2. *Gender Discrimination*

The court already has discussed this issue in the context of its ruling on the claims against the City of South Milwaukee. "As [an] equal protection claim[], . . . selective enforcement require[s] proof 'that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.'" Conley v. United States, 5 F.4th 781, 789 (7th Cir. 2021) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 635–36 (7th Cir. 2001)); see also Howard v. Cook Cnty. Sheriff's Off., 989 F.3d 587, 609 (7th Cir. 2021) (applying Chavez to a gender discrimination case). To prove discriminatory effect, a plaintiff "must

show that he was a member of a protected class and that he was treated differently from a similarly situated member of an unprotected class." Alston v. City of Madison, 853 F.3d 901, 906 (7th Cir. 2017). "Discriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." Id. at 907 (quotation omitted).

The plaintiff has not proven that Walker treated him differently from a similarly-situated person; he has not produced evidence that there were others who'd filed lawsuits against the City whom Walker threatened with arrest. Nor has the plaintiff produced evidence that Walker took any action against him based on his gender. See Sow v. Fortville Police Dep't, 636 F.3d 293, 303 (7th Cir. 2011) (noting that "in order to survive summary judgment on [an equal protection claim], Plaintiff was required to provide evidence that [the officer] was motivated by a discriminatory purpose" (quotation marks omitted)). In fact, the plaintiff has alleged that Walker discriminated against him because he filed a lawsuit against the City, not because of his gender—and he has not supported that allegation with evidence.

The court will grant the defendants' motion for summary judgement and deny the plaintiff's motion for summary judgement as the motions relate to the plaintiff's gender discrimination claim against Walker.[5]

---

[5] Because the court has found in Walker's favor on the substantive claims, it need not consider his argument that he is entitled to qualified immunity.

J.    Conclusion

There is no question that the plaintiff believes Polak deliberately and repeatedly lied to the police, telling them that the plaintiff had sexually assaulted her when the interactions between the two were fully consensual. The plaintiff cannot understand why the police believed Polak, or didn't question her version of events, and why they relied on her claims to arrest the plaintiff, which resulted in his spending two and a half days in jail. The plaintiff's arrest and detention clearly have had a detrimental impact on him. But the plaintiff has not proven municipal liability on the part of the City of South Milwaukee, and his claims against Walker have little to do with the harm he says he suffered from Polak's false allegations. The defendants are entitled to judgment in their favor as a matter of law.

## III.    Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 60.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 64.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of March, 2024.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**

41